**In re Lawrence Joseph HESS, Respondent.**

**No. SC 92923.**

Supreme Court of Missouri,
En Banc.

Aug. 27, 2013.

Alan D. Pratzel and Sharon K. Weedin, Chief Disciplinary Counsel's Office, Jefferson City, for Chief Disciplinary Counsel.

Lawrence Joseph Hess, pro se.

ZEL M. FISCHER, Judge.

The Office of Chief Disciplinary Counsel (OCDC) filed an information and motion for reciprocal discipline recommending that this Court indefinitely suspend Lawrence Hess's Missouri law license with no leave to reapply for six months. The Illinois Supreme Court suspended Hess's Illinois license to practice law for six months for filing frivolous lawsuits in violation of Illinois Rules 3.1 and 8.4(a)(5), which are analogous to Missouri Rules 4–3.1 and 4–8.4(d), respectively.

The evidence[1] overwhelmingly demonstrates that Hess violated Rule 4–3.1, Meritorious Claims and Contentions, by expressly authorizing the filing of attorney's liens and lawsuits alleging breach of contract, breach of promise, interference with attorney's liens, and unjust enrichment, when all of those liens and claims were frivolous and without merit. Hess also violated Rule 4–8.4(d)'s admonition not to, "engage in conduct prejudicial to the administration of justice" because those liens and claims were frivolous, without merit, wasted the time and resources of the courts, delayed the clients' receipt of their settlement money, required the hiring of additional legal counsel, and harmed the integrity of the profession.

Hess's Illinois license was suspended for six months by the Illinois Supreme Court in an order dated September 17, 2012. The plain language of Rules 4–3.1 and 4–8.4(d) does not differentiate between an attorney acting as an advocate or an attorney acting in his own business and personal affairs, and the policy supporting reciprocal discipline, which is in place to protect the public, must be given proper weight and consideration by this Court. Therefore, Hess's Missouri license is suspended indefinitely without leave to apply for reinstatement for a period of six months.

**Factual and Procedural Background**

Lawrence Hess was admitted to the Missouri bar in 1975. Hess became an employee of Kanoski & Associates in 2001.

---

1. The Illinois hearing board made findings of fact based on evidence and credibility determinations of the witnesses that "it was clearly and convincingly established that [Carr and Hess] filed the lawsuit against the Loyds knowing it was frivolous and without legal merit, and for the purpose of harassing and burdening the Loyds because of an employment dispute with Kanoski."

Hess signed an employment agreement providing that he would receive a base salary plus a bonus based on the amount of fees he generated. That employment agreement also provided, in pertinent part:

Employee acknowledges that while licensed attorneys must perform all legal services, the clients contracting for said services are clients of the Corporation and not of any individual employee[.]

\* \* \*

All proceeds received by [Employee] for professional services rendered for Corporation clients shall be the property of the Corporation.

\* \* \*

Furthermore, Employee acknowledges that the service nature of the business of the Corporation requires close client contact, and that he has no proprietary right or interest in any client[.]

\* \* \*

Employee agrees that, in the event employment is terminated, Employee will not notify, advise, solicit, or otherwise contact clients of the Corporation.

\* \* \*

Corporation and Employee acknowledge that each client of the Law Firm has the right to freely choose representation in the event of a separation of employment by Employee from the Corporation and that choice should be allowed to take place without interference from either the Corporation or the Employee.

\* \* \*

Employee acknowledges that where the Corporation retains clients upon Employees [sic] termination that Employee has no proprietary interest in fees to be earned since the Employee is to be fully compensated through his salary and/or bonus for all work done while an Employee of the Corporation.

In 2002, Ronald and Cathy Loyd entered into a contingency fee agreement with Kanoski & Associates, not Hess, to represent them in a medical malpractice action. The fee agreement provided that the Loyds would pay "the firm" a contingent fee, the firm could assign associate counsel to work on their case, and the associate's fees would be paid by the firm.

Hess was assigned to work on the Loyds' case. Hess filed suit on behalf of the Loyds against Dennis Billiter, M.D., and Litchfield Family Practice Center, L.L.P., in February 2004. Hess was terminated from employment with Kanoski & Associates in February 2007. Hess performed most of the work on the Loyd case prior to termination but did not perform any work on the case after February 2007.

Kenneth Blan was asked to handle some of Hess's cases, and Blan became "of counsel" to Kanoski & Associates. The Loyds chose to stay with Kanoski & Associates and have Blan represent them. They signed an agreement to that effect in March 2007. Blan entered an appearance as counsel in their case.

From January to October 2008, Hess was not authorized to practice law in Illinois, choosing not to pay the Illinois attorney registration fee to reduce expenses and practice law only in Missouri. He later changed his mind, and his Illinois license was reinstated in October.

A mediation of the Loyds' case took place in March 2008, and a settlement agreement was finalized in June 2008. Hess contends he had a breach of contract claim against Kanoski & Associates and was owed compensation from the firm. Hess hired an attorney, Bruce Carr, to represent him on that claim in April 2008.

On May 15, 2008, Carr sent a letter to the Loyds informing them that Hess had

retained Carr as his attorney and stating: "Hess remains responsible for the lawsuit you entrusted to him." Carr and Hess knew at the time the letter was sent that Hess had done no work on the Loyd case since February 2007 and that, as of January 2008, Hess did not have an active Illinois law license. On the same day, Carr sent notice of Hess's attorney's lien to the defendant in the Loyds' lawsuit, Dr. Billiter. A copy of the notice of lien was sent to Ron Kanoski at Kanoski & Associates. Loyd responded to Carr by letter, stating: "Mr. Hess is not responsible for my lawsuit. I have a very competent attorney. Do not contact me again regarding this matter." Hess said he received Loyd's letter on May 19, 2008, and, even though the letter did not say Hess was fired, Hess and Carr treated this letter as Loyd's attempt to terminate his relationship with Hess.

On May 21, 2008, Carr filed Hess's notice of attorney's lien with the clerk of the circuit court of Montgomery County, Illinois, in the case captioned *Loyd v. Dennis Billiter, M.D., et al.*, No. 04–L–10. A copy was sent to the Loyds. The Loyds, through their attorneys, filed a petition on June 24, 2008, to strike or adjudicate the lien. The petition asserted, among other things, that Ronald Loyd told Hess during their telephone conversation in March 2007 that Ronald "wanted nothing further to do with" Hess and that the Loyds "had competent representation with whom they were very pleased." The Loyds both signed the attestation certifying the statements in the petition were true.

Hess then filed a complaint on July 21, 2008 and later testified that he expressly gave Carr permission to file the attorney's lien against the Loyds. Hess and Carr discussed the claims against the Loyds, but Hess said he did not read the complaint until after it was filed.

Kanoski testified that he felt "stunned" and "embarrassed" when he learned of the complaint against the Loyds. He told the Loyds that his firm would defend them at no charge. Attorney Todd Bresney, an associate at Kanoski & Associates, handled the Loyds' defense.

In September 2008, Carr sent a letter to Bresney stating "we could probably settle Mr. Hess'[s] claim against the Loyds in exchange for Kanoski & Blan's payment to Mr. Hess of Mr. Hess'[s] portion of the Loyd fee." Carr sent a second letter to Bresney on October 2, 2008, stating that the defendants in the Loyds' medical malpractice case deposited $330,625 in escrow for attorney's fees and costs with the Montgomery County clerk and that "I will recommend that Mr. Hess dismiss his claim against the Loyds in exchange for half of the money now on deposit-$165,312." Bresney found Carr's demand appalling and "nothing but extortion."

On December 5, 2008, the circuit court, finding that Hess's claims against the Loyds were "legally deficient" and that Hess "does not have a valid legal basis for his claims against these defendants," dismissed them with prejudice. The court also found the Loyds were entitled to sanctions. The circuit court ultimately awarded the Loyds "$9,275 in attorney fees and $114.82 in expenses from plaintiff [Hess] or his attorney, Bruce Carr." The Illinois Appellate Court, Fifth District, affirmed the circuit court's judgment. *Loyd v. Billiter*, 403 Ill.App.3d 1120, 373 Ill.Dec. 156, 993 N.E.2d 156 (2010) (unpublished order under Supreme Court Rule 23).

Carr also filed notices of attorney's liens in other matters that Hess handled while at Kanoski & Associates. Two of those matters are the subject of charges of misconduct: *Eller v. Villegas*, No. 05L24, filed in the circuit court of Macoupin County, Illinois, and *Thompson v. Skeffington*, No.

02L51, filed in Macon County, Illinois. During oral argument in the *Thompson* case, one of the appellate judges characterized Carr's assertion that Hess's attorney-client relationship with Thompson continued despite Hess's termination from Kanoski & Associates as **"the most absurd, ridiculous argument I think I've heard in 21 years on this court."** (emphasis added).

### The Findings of the Hearing Board

The hearing board found "it was clearly and convincingly established that" Carr and Hess "filed the lawsuit against [the Loyds] knowing it was frivolous and without legal merit, and for the purpose of harassing and burdening the Loyds because of an employment dispute with Kanoski."

The complaint filed by Hess against the Loyds asserted that the Loyds breached their contract with Hess and their promises to Hess regarding compensation for Hess's legal services to them. However, the Loyds did not enter into any contract or agreement, or make any promise, to pay attorney's fees to Hess, but instead entered into a contingent fee contract with Kanoski & Associates and, thereby, agreed to pay Kanoski & Associates a contingent fee. The board found that the Loyds did not, at any time, fail to comply with the terms of their contract with Kanoski & Associates and that, under the plain terms of the employment agreement, Hess was to be paid by Kanoski & Associates and not by clients who entered into representation agreements with Kanoski & Associates.

The board also found that Hess's unjust enrichment complaint against the Loyds was frivolous and without legal merit because Hess did not enter into a contingent fee agreement, or any fee agreement, with the Loyds and further found that there were no credible facts that justified a finding that there was a contract or agreement between Hess and the Loyds. Even if Hess claimed he was not reasonably compensated for the work he had done on the Loyds' case, his contractual dispute would have been with Kanoski & Associates rather than with the Loyds themselves. The board found that Hess knew he did not represent or have an attorney-client relationship with the Loyds after his telephone conversation with Ronald Loyd in March 2007.

Further, the board found, "based on the totality of the circumstances shown by the evidence, that the purpose behind the filing of the lawsuit against the Loyds by Hess and Carr was to harass, intimidate, and burden the Loyds in order to pressure or influence Kanoski and Blan to settle Hess'[s] claim against them." The letters sent by Hess and Carr to the Loyds' attorney indicated that the lawsuit against the Loyds would be dismissed if Kanoski and Blan paid Hess a portion of the fee in the Loyds' medical malpractice case, although neither Kanoski nor Blan were ever a party to Hess's lawsuit against the Loyds.

The board found that both Hess and Carr "knowingly and deliberately participated in the filing of the meritless lawsuit against the Loyds." This finding was based on the further finding that the Loyds, along with the two other clients of Kanoski & Associates against whom Hess and Carr filed notices of attorney's liens, Penny Eller, the special administrator of the Estate of Terry Eller, and Robert Thompson, "hired and placed their claims into the hands of Kanoski & Associates, not Hess, and that Hess'[s] involvement in their cases was as an employee and representative of Kanoski & Associates. Thus, Hess had no statutory attorney's liens and no reason to believe he had." The board found that "both Carr and Hess actively

participated in the serving of the notices of attorney's lien and the filing [of] the notices with the [circuit courts] while knowing that the attorney's liens were without merit and invalid."

In addition, Hess chose not to pay his Illinois attorney registration fee for the year 2008, and he was not authorized to practice law in Illinois from January to October 2008. He explained that he did not pay the registration fee because he was trying to cut expenses and thought he had a better chance of finding employment in Missouri, where he was still licensed. Hess clearly demonstrated that he did not want nor have any clients in Illinois.

The Illinois Supreme Court suspended Hess from practicing law for six months and ordered the discipline recommended by the board on September 17, 2012. The OCDC filed an information pursuant to Rule 5.20 on October 30, 2012, informing this Court that the Illinois Supreme Court had disciplined Hess's Illinois license for professional misconduct. This Court then issued Hess an order to show cause why his Missouri license should not be disciplined based on the order of the Illinois Supreme Court.

### Rule 5.20 and the Policy Behind Reciprocal Discipline

Rule 5.20, Reciprocal Discipline for Misconduct, reads:

Upon the filing of an information directly in this Court by the chief disciplinary counsel that a lawyer admitted to the practice in Missouri has been adjudged guilty of professional misconduct in another jurisdiction, this Court shall cause to be served on the lawyer an order to show cause why said adjudication should not be conclusive of said misconduct for the purpose of discipline by this Court.

■ The primary purpose of reciprocal discipline is to protect the public by bringing an attorney's prior conduct in another jurisdiction to its attention.

Reciprocal discipline prevents attorneys from violating ethical rules, getting suspended from the practice of law, and then transferring to a new jurisdiction to continue to practice with an unblemished record of ethical conduct. Even if lawyers are not suspended from practicing in the jurisdiction originally sanctioning them, a second jurisdiction in which the attorney is licensed may still want to sanction the lawyer so the public in their jurisdiction would be informed regarding the attorney's conduct. The public must be protected from unethical and sometimes illegal conduct of these attorneys; therefore, most jurisdictions assert reciprocal discipline.

Alan M. Colvin, Commentary, *Reciprocal Discipline: Double Jeopardy or a State's Right to Protect Its Citizens?*, 25 J. Legal Prof. 143, 143 (2001).

■■ The practice of imposing reciprocal discipline also presents a streamlined process that preserves the valuable resources of the courts.

Consistent with the general goal of protecting the public and the legal profession, the policy of reciprocity also contributes in facilitating the orderly and efficient administration of lawyer discipline. By recognizing the judgments of sister jurisdictions, it alleviates the burden of securing witnesses and evidence otherwise required for *de novo* hearings, and it dispenses with the necessity of resolving critical factual issues. Additionally, reciprocal discipline not only enables forum states to implement disciplinary actions expeditiously, but, moreover, it minimizes the potential for inconsistent sanctions for identical misconduct by the same attorney.

Denise Benjamin, Student Project, *Reciprocal Discipline: An Approach to Lawyer Discipline*, 31 HOW. L.J. 299, 301 (1988) (citations omitted).

## Analysis

Hess asserts two arguments as to why this Court should not impose reciprocal discipline against him. First, Hess claims that the Illinois Supreme Court erred by concluding he committed professional misconduct because he was a client in the Illinois litigation it determined was brought in violation of Rules 3.1 and 8.4(a)(5), and that Missouri should not impose reciprocal discipline because he was the litigant in the claims, not the attorney. Second, Hess claims that he was denied due process in the first complaint filed in Illinois because it did not allege all of the facts that formed the basis for the Illinois misconduct.

The Illinois rules that Hess violated, like Missouri's parallel provisions, do not distinguish between an attorney acting as an advocate and an attorney acting as a litigant. Whether an attorney or a litigant, Hess was always an officer of the court and had an obligation to conduct his business and personal affairs in accordance with the law. Because Hess knowingly participated in the filing of multiple claims and liens lacking a basis in fact and law, this Court holds that Hess violated Missouri's comparable rules of professional responsibility, which are Missouri Rules 4–3.1 and 4–8.4(d). Hess's actions in Illinois constituted the "knowing" and "deliberate" filing of frivolous claims and liens, which is supported by the finding that Hess "misused the courts and harmed Hess's former clients in an effort to gain an advantage in Hess's employment dispute[.]" The OCDC's recommendation of a suspension is warranted in this case.

## Hess's Conduct Violated Rule 4–3.1 & 4–8.4(d)

The plain language of Rule 4–3.1 indicates that the rule is intended to apply to lawyers regardless of whether they are acting as an advocate or bringing a lawsuit as a litigant. "This Court interprets its rules by applying the same principles used for interpreting statutes." *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011), *reh'g denied* (Oct. 4, 2011). The same principles used to interpret statutes apply when interpreting this Court's rules, with the difference being that this Court is attempting to give effect to its own intent. This Court's primary rule of interpretation is to apply the plain language of the rule at issue. *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009) (interpreting a statute). "This Court's intent is determined by considering the plain and ordinary meaning of the words in the Rule." *State ex. rel. Vee–Jay Contracting Co. v. Neill*, 89 S.W.3d 470, 472 (Mo. banc 2002). If the intent is clear and unambiguous by giving the language used its plain and ordinary meaning, then this Court is bound by that language and there is neither need nor reason to apply any other rule of construction in interpreting the rule. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011) (interpreting a statute).

The language of Rule 4–3.1 is plain, ordinary, and unambiguous. The rule provides, "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law." This rule begins with a singular, unqualified subject: "a lawyer." It does not read "A lawyer acting as an advocate," nor does it read "A lawyer as a litigant." It simply reads, "A lawyer."

Hess was, in fact, a lawyer who brought frivolous claims. It does not matter in what capacity he did so. The plain language of Rule 4–3.1 makes no such distinction, and neither will this Court.

Hess's argument that he should escape discipline because he was acting as a litigant derives, at least in part, from the comments to Rule 4–3.1. As discussed more fully below, Comment 1 and Comment 2 to Rule 4–3.1 mention the lawyer as an advocate. But these comments should not be used to add ambiguity to an otherwise unambiguous provision. Section 21 of the Preamble to the Missouri Rules of Professional Conduct provides, "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule.... The Comments are intended as guides to interpretation, but *the text of each Rule is authoritative.*" (emphasis added). Therefore, while the comments accompanying Rule 4–3.1 may serve to assist in the interpretation of the rule if it were ambiguous, they should not be used to usurp the plain language. The Illinois authorities thought Illinois's nearly identical rule was clear and applied it as written. So too does this Court.

That an attorney may escape scrutiny when acting unethically simply by hiring another attorney who is equally unethical to perform actions on his behalf is a concept especially repugnant as it relates to the integrity of the profession of law.[2] Section 5 of the Preamble to Rule 4 makes explicit that lawyers must act ethically both in "professional service to clients *and in the lawyer's business and personal affairs.*" (emphasis added).

Section 5 of Rule 4, the Preamble to the Missouri Rules of Professional Conduct, expressly provides:

■ A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

In addition, Rule 4–3.1, Meritorious Claims and Contentions, states:

*A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.*

(emphasis added). The plain language of Rule 4–3.1 does not limit its applicability to attorneys acting in their representative capacity on behalf of a client, as do Rules 4–3.9, 4–4.1, 4–4.2, 4–4.3, and 4–4.4. Although Comments 1 and 2 to Rule 4–3.1 address a lawyer acting in a representative capacity, Comment 1 does so in an informative fashion rather than an interpretive one. Comment 1 states: "The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, *but also a duty not to abuse legal procedure.*" (emphasis added). The reference to the lawyer as advocate in this comment references the attorney's duty to act as a zealous advocate for his or her clients, but also informs the attorney that such acts must still conform to the attorney's duty "not to abuse legal

---

2. An attorney who is a client is in a unique position due to that attorney's special competence in matters of the law and his or her personal perspective given the facts of his or her own case.

procedure." Its reference to an attorney's representative capacity is only in passing to remind attorneys that, while they owe clients the best representation possible, that representation does not extend beyond the attorney's own ethical duties as proscribed by the rules. Likewise, comment 2 to Rule 4–3.1 only applies to allow attorneys to make good faith arguments for clients in a representative capacity in situations where the full facts may not be available to them at the time the arguments are made. Comment 2 has no applicability to the case at hand, because the facts and law were both known to Hess at the time he expressly authorized the frivolous liens and claims filed by Carr on his behalf.

A litigant who is also an attorney is not merely any litigant; that litigant nevertheless remains an attorney, an officer of the courts, and a member of the bar before which he or she has been admitted to practice law, and his or her actions that come within the confines of legal process as either an attorney or as a litigant reflect on the profession of law as a whole. This is especially relevant for an attorney whose role in the filing of a claim or lien as a litigant is directly related to his representation of a former client or clients while he was acting in his capacity as an attorney. This Court's prior cases recognize that an attorney has an ethical duty to conform his business and personal conduct to the requirements of the law. *See In re Stewart*, 342 S.W.3d 307 (Mo. banc 2011); *In re Duncan*, 844 S.W.2d 443 (Mo. banc 1992); *In re Frick*, 694 S.W.2d 473 (Mo. banc 1985); *In re Panek*, 585 S.W.2d 477 (Mo. banc 1979). An attorney licensed to practice law in Missouri should not be able to shirk his ethical obligations simply because he is able to hire an equally unethical attorney to conduct his "business and personal affairs."

■ Rule 4–8.4(d), defines "professional misconduct" as occurring when a lawyer "engage[s] in conduct that is prejudicial to the administration of justice[.]" Notably, this rule also is not explicitly limited to those times when an attorney is acting in a representational capacity on behalf of a client. Hess's filing of claims against his former clients alleging breach of contract, breach of promise, interference with Hess's attorney's liens, and unjust enrichment were all found to be without merit and dismissed by different circuit courts. Hess appealed and lost both appeals. Hess's case against the Loyds was so frivolous Hess was assessed a monetary sanction. The circuit court's decision in that case was affirmed upon appeal.

The record of the Illinois proceedings substantiate that Hess knowingly and deliberately participated in bringing frivolous litigation. Hess's former clients were emotionally and financially harmed by his conduct. The integrity of the profession is damaged when a lawyer, whether as a litigant or an attorney acting in a professional capacity, brings frivolous litigation, and it is even more damaging to the profession when the purpose of the frivolous litigation is to coerce money from a former client and employer.

There is no dispute that Hess knowingly brought claims against the Loyds that lacked "a basis in law and fact" and, therefore, were frivolous and without merit.[3] The Loyds had a contract for a contingent fee with Kanoski & Associates, not Hess. Hess's representation of the Loyds was not based on a contract for a contingent fee between the Loyds and Hess, but rather was based on Kanoski & Associates

---

**3.** Notably, none of Hess's frivolous claims involved questions of law that would have required legal expertise that Hess did not possess.

assigning Hess to the case. Further, Hess was to be compensated solely by Kanoski & Associates pursuant to a contract for a salary and bonus contingent on fees generated. The record supports the conclusion that Hess refused to file such unmeritorious claims until such time as the Loyds assisted Kanoski in attempting to defeat Hess's notice of attorney's lien, after which time he gave Carr his approval. Such an action, by a member of the bar in this state, constitutes "knowing" and "deliberate" misconduct. Hess participated in the filing of the frivolous claims and liens and did so with intent to use such frivolous claims and liens to subvert the administration of justice for the purpose of obtaining fees to which he clearly was not entitled and hasten a settlement in a dispute involving a former employer rather than the party against whom he filed the frivolous claims and liens. Any time an attorney participates in the filing of a frivolous claim in a court of law, whether as an attorney in a representative capacity or as a client of another attorney, such an action reflects badly on the legal profession as a whole. The plain language of the rules does not provide Hess any defense to discipline, and there is no good policy reason for exempting Hess from reciprocal discipline.

Hess has not cited a single case from any other state that would support Hess's claim that he is immune from discipline because he was a litigant, not the attorney, asserting the frivolous claim. There would be absolutely no dispute that, if Hess was self-represented, the rules would require discipline.[4] Hess does not argue that Carr, his attorney of record in the frivolous litigation, acted without consulting Hess and obtaining his consent. This was not a case of a rogue lawyer filing frivolous lawsuits without Hess's knowledge and consent. The hearing board found that Hess's lawsuit against the Loyds was meritless and that Hess knowingly and deliberately participated in its filing.

All of the frivolous contentions and claims made by Hess were related to his representation, as an attorney, of his former clients. The claims filed by Carr on Hess's behalf were claims stemming from work Hess did as an attorney while employed at Kanoski & Associates, which contractually limited his compensation to salary and bonus. Hess's argument that he was merely a litigant and that his capacity as a client is unrelated to his role as an attorney and, therefore, should shield him from discipline under the Missouri rules is especially specious as it relates to the facts of this case.

Because Hess knowingly participated in the filing of frivolous claims, his conduct violated Rule 4–3.1. These frivolous suits were designed to harass, intimidate, and burden the Loyds in order to pressure or influence Kanoski and Blan to settle Hess's claim against them. This conduct is prejudicial to the administration of justice and is, therefore, a violation of Rule 4–8.4(d).

### Due Process Claims Relating to the Illinois Supreme Court's Disciplinary Order

■ Hess, in his brief, argues that the disciplinary complaint filed against him in Illinois did not allege facts sufficient to support the disciplinary action taken

---

4. In order to interpret this Court's Rule 4–3.1 to not impose discipline this Court would need to add the following bracketed phrases to the rule: [as a litigant] or [acting as an advocate]. This interpretation of the rule ignores the rule's plain language and ignores the purpose of all rules of attorney discipline, which are designed to protect the public and maintain the integrity of the profession.

against him by the Illinois Supreme Court. Hess argues that the administrator's complaint, in the Illinois disciplinary proceedings, failed to allege as facts that the *entire* lawsuit he filed against the Loyds was frivolous or without merit, that it failed to allege as fact that the *entire* lawsuit was filed to pressure Kanoski to settle the claim Hess had filed against Kanoski & Associates, and that it failed to allege as fact that *both* Carr *and* Hess filed the lawsuit against the Loyds knowing it was frivolous and without any legal merit.

Hess did not take minimal steps to preserve this argument for review. He attached no copy of the complaint filed in Illinois to his brief for this Court's review. The OCDC provided a copy of the complaint below in an appendix to its brief in case this Court wished to review it. The complaint filed against Hess in the Illinois disciplinary action by the administrator of the Illinois Attorney Registration and Disciplinary Commission states, in the pertinent part:

21. On July 21, 2008, Carr, on behalf of Hess, filed a complaint in Montgomery County against Ronald and Cathy Loyd (hereinafter, "the Loyds") entitled *Lawrence J. Hess v. Ronald O. Loyd and Cathy J. Loyd*, No. 08 L 11 (hereinafter, "*Hess v. Loyd*"). The Loyds were the only named defendants. Hess sought money damages against the Loyds.

22. Carr consulted with Hess about filing the lawsuit against the Loyds and Hess approved of the action.

23. In part, the complaint alleged:

   a. That the Loyds had placed their claims "in the hands of the plaintiff" [Hess] for suit or collection;

   b. That the Loyds and Kanoski & Associates meant to benefit Hess by the contingent fee contract they signed with the firm;

   c. That the Loyds "knew or should have known" about Hess' employment contract with the law firm;

   d. That the Loyds had refused to pay Hess "the amounts promised to Hess or the reasonable value of his services";

   e. That the Loyds' conduct had caused Hess to suffer "direct special, incidental, consequential, compensatory damages and economic loss and non-economic damages such as emotional distress, anxiety, sleeplessness, and humiliation";

   f. That the Loyds had breached written, oral and implied promises to Hess regarding his compensation for legal services; and

   g. That the Loyds had interfered with liens that Hess had on their file and recovery and had interfered with those liens by settling their case without his consent or knowledge.

24. The allegations, set out in paragraph 23, above, that Carr made against the Loyds had no legal or factual basis upon which to state a claim against them and were made to harass and intimidate the Loyds and pressure Kanoski to settle Hess' claims against the firm. At all times, Carr consulted with Hess, and Hess approved of the pleadings that Carr filed on his behalf.

25. The complaint in *Hess v. Loyd* also made allegations which had no factual connection to any conduct by the Loyds, including:

   a. That during Hess'[s] employment with Kanoski & Associates, Robert K. Thompson, 170 Dow Corning Breast Implant Plaintiffs,

Denise Lowery, Dorothy Fetterman, Julie Hoelscher, Carl Hoelscher and Penny Eller, Special Administrator for the Estate of Terry Eller, had placed their claims "into the hands" of Hess for suit;

b. That Kanoski and Blan had denied Hess access to the Julie Hoelscher file and settled the case without his knowledge and consent;

c. That Kanoski and Blan had settled the Lowery case without Hess' knowledge or consent;

d. That Kanoski and Blan had settled the Fetterman case without Hess' knowledge or consent;

e. That Kanoski and Blan had received notices of Hess'[s] statutory attorney's lien claims in the Eller and Thompson cases;

f. That Kanoski & Associates had improperly fired Hess; and

g. That Kanoski & Associates owed Hess more than $300,000 in minimum salary and guaranteed bonuses, as well as bonuses earned from the Dow[ ] Corning plaintiffs, Thompson, Eller, Hoelscher, Fetterman, Walston, Shirley and Lowery cases;

26. The allegations, set out in par. 25, above, that Carr made against the Loyds had no legal or factual basis upon which to state a claim against the Loyds and were made to harass and intimidate the Loyds and pressure Kanoski to settle Hess'[s] claims against the firm. At all times, Carr consulted with Hess, and Hess approved of the pleadings that Carr filed on his behalf.

Hess's argument fails, even if this Court were to credit his arguments going to due process, because the rules, both in Illinois and Missouri, provide that it is an ethical violation for an attorney to file even a single claim that is frivolous and without merit in fact or law. Further, Hess's due process argument was considered and rejected by the Illinois review board. The Illinois Supreme Court declined to allow Hess to file exceptions to the review board's decision. Hess also filed for a writ of certiorari in the United States Supreme Court from the Illinois Supreme Court's disciplinary order, which was denied. The Illinois review board reviewed this claim and found that,

> [a]lthough the Administrator's complaint specifies certain allegations from the *Hess v. Loyd* complaint as lacking a legal and factual basis, the Administrator also alleged that the circuit court dismissed the *Hess v. Loyd* complaint on the grounds that all of the Hess's claims were legally deficient and the complaint was brought to harass the Loyds and attempt to gain an advantage over other parties. These allegations provided notice to [Hess] that they were charged with filing a lawsuit that was frivolous in its entirety and used for improper purposes. While the Hearing Board's findings do not precisely mirror the Administrator's complaint in every instance, [Hess] ha[s] not shown that they were surprised by the evidence presented at the hearing or unable to defend themselves against the charges. Accordingly, their due process rights were not violated.

This Court agrees.

## Conclusion

Hess knowingly filed notices of attorney's liens and claims against his former clients that were frivolous and without merit in law or fact. That Hess hired another attorney to file them on his behalf

does not relieve him of his duties as an attorney to abide by the Rules of Professional Conduct. Hess's conduct in this case violated Rules 4–3.1 and 4–8.4(d). Hess is suspended indefinitely from the practice of law in Missouri without leave to apply for reinstatement for six months. Hess is ordered to pay costs and fees pursuant to Rule 5.19(h).

RUSSELL, C.J., and WILSON, J., concur.

BRECKENRIDGE, J., concurs in separate opinion filed.

TEITELMAN, J., dissents in separate opinion filed.

STITH and DRAPER, JJ., concur in opinion of TEITELMAN, J.

PATRICIA BRECKENRIDGE, Judge.

I concur in the portion of the principal opinion's holding that Lawrence Joseph Hess violated Rule 4–8.4(d) by engaging in conduct prejudicial to the administration of justice. Rule 4.8–4 enumerates conduct that amounts to professional misconduct, including a violation of a Rule of Professional Misconduct or conduct prejudicial to the administration of justice. While the rule states that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Misconduct ...", it does not necessarily follow that there is no professional misconduct without a separate violation of a rule other than Rule 4.8–4. Professional misconduct may arise when an attorney engages in conduct that is prejudicial to the administration of justice, regardless of whether such conduct violates any other Rule of Professional Misconduct. Therefore, the lack of a violation of another Rule of Professional Conduct does not preclude a violation of Rule 4–8.4(d).

While this Court has rarely applied the rule outside the context of an attorney's representation of a client, the language of Rule 4–8.4(d) does not limit its application to conduct occurring in the representation of a client. Accordingly, I concur in the principal opinion's application of the rule to Mr. Hess' conduct and the conclusion that Mr. Hess knowingly and deliberately participated in bringing frivolous claims and filing frivolous liens against his former clients and that conduct was prejudicial to the administration of justice. Mr. Hess is not shielded from responsibility by having an attorney represent him in filing suit because the nature of his claims for collection of attorney fees did not involve complex facts or law that would have permitted him to rely on the expertise of his counsel.

I do not concur in the remainder of the principal opinion, however, holding that Mr. Hess violated Rule 4–3.1. I do not believe that Rule 4–3.1 applies to an attorney who is acting as a client and not as an advocate. While the principal opinion is correct that the word "lawyer" is not limited or modified in Rule 4–3.1, the use of the term "lawyer" in the context of that rule, and in the context of the rules that precede and follow it, clearly references acts of an attorney as an advocate—not actions done in conducting the lawyer's business or personal affairs. *See* Rule 4–3.2 (lawyer's duty to promote expeditious litigation); Rule 4–3.3 (lawyer's duty to act with candor toward the courts); Rule 4–3.4 (lawyer's duty to act with fairness towards opposing counsel). As noted by the dissenting opinion, "neither OCDC nor this Court's independent research has revealed any other case in which Rule 4–3.1 or its analogues in other states have been applied to a lawyer who is not acting as an advocate but instead is a client."

Because Mr. Hess has violated Rule 4–8.4(d), I concur to impose reciprocal discipline on Mr. Hess and indefinitely suspend his license with no leave to re-apply for six months.

RICHARD B. TEITELMAN, Judge.

The principal opinion holds that Mr. Hess should be subject to reciprocal discipline for actions undertaken as the client of another attorney. I respectfully dissent from this holding because Rule 4–3.1 applies to a lawyer in his or her representational capacity and not to actions undertaken as a client. Further, the alleged violation of Rule 4–8.4(d) was based on the alleged violation of Rule 4–3.1. Consequently, I would hold that this Court should not enter an order of reciprocal discipline.

Although this Court usually imposes reciprocal discipline, the imposition of discipline in another jurisdiction does not require this Court to impose reciprocal discipline. Instead, this Court reserves its independent judgment as to the fitness of the members of its bar. *In re Storment,* 873 S.W.2d 227, 230 (Mo. banc 1994). In all cases, the purpose of discipline is not to punish the attorney, but to protect the public and maintain the integrity of the legal profession. *In re Stewart,* 342 S.W.3d 307, 309 (Mo. banc 2011), quoting *In re Kazanas,* 96 S.W.3d 803, 807–08 (Mo. banc 2003).

The dispositive issue is whether Hess' conduct as a client violates Rule 4–3.1. Rule 4–3.1 provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

The plain language of Rule 4–3.1 provides that "a lawyer" shall not bring a frivolous lawsuit. While the Preamble to Rule 4 provides that lawyers must act ethically both in "professional service to clients and in the lawyer's business and personal affairs," the Comments specifically guiding the intended application of Rule 4–3.1 indicate that Rule 4–3.1 is intended to apply to a lawyer's conduct in representing clients.

Comment one states that "[t]he advocate has a duty" to utilize legal procedure for his or her client's cause but that the law "establishes the limits within which an advocate may proceed." This Comment makes no reference to an attorney who is a client. The Comment instead makes clear that the lawyer's duty as an "advocate" is to utilize the law to the client's fullest benefit.

Similarly, Comment two provides that "[t]he filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated . . . ." The Comment then provides that "[w]hat is required of lawyers, however, is that they inform themselves about the facts of their client's cases." As in Comment one, Comment two provides that the rule applies to a lawyer who is representing a client; not to a client who happens to be a lawyer. Thus, when a lawyer elects to hire an attorney and becomes a client, it is the hired lawyer's professional responsibility to advise the lawyer-client's claim and proceed accordingly. In such cases, the attorney becomes a client, seeking the services of an advocate who, pursuant to Comment two, must "determine that they can make

good faith arguments" on the client's behalf. Hess could have chosen to file the cases in question pro se, and, in that case, there would be no question that Rule 4.3.1 applied. However, Hess limited his participation to the role of a client, albeit an active client according to the review board's findings. As in Comment one, nothing in Comment two provides that Rule 4–3.1 applies to client who happens to be a lawyer.

In addition to the language of the Comments, this Court's cases indicate that professional discipline for personal misconduct is generally reserved for those cases in which the lawyer has committed a crime that reflects adversely on his or her fitness as a lawyer or has engaged in egregiously dishonest or destructive personal misconduct. This is illustrated by the cases cited by the principal opinion. In *In re Stewart*, 342 S.W.3d 307 (Mo. banc 2011), this Court suspended an attorney who was convicted of a felony following his fourth conviction for driving while intoxicated. Likewise, in *In re Duncan*, 844 S.W.2d 443 (Mo. banc 1992), this Court suspended an attorney who pleaded guilty to two misdemeanors for willfully failing to pay federal income taxes. In *In re Frick*, 694 S.W.2d 473 (Mo. banc 1985), this Court disbarred an attorney who had an affair with a divorce client and, when the relationship ended, proceeded to engage in a course of conduct that amounted to a "reign of terror and intimidation." The attorney's conduct included a felony conviction for unlawful use of a weapon for firing at a security officer who had discovered the attorney spray painting threatening graffitti directed at his former client and girlfriend. *Id.* at 479. Finally, in *In re Panek*, 585 S.W.2d 477 (Mo. banc 1979), this Court disbarred an attorney who defrauded his friend and former client by utilizing a power of attorney to make unauthorized investments and transactions. In contrast to these cases,

Mr. Hess' conduct, though perhaps exhibiting poor judgment, does not involve a criminal conviction or an effort to defraud or terrorize a former client. The cases cited do not establish the propriety of reciprocal discipline in this case.

Finally, neither the OCDC nor independent research has revealed any other case in which Rule 4–3.1, or its analogues in other states, have been applied to a lawyer who is not acting as an advocate but instead is a client. A likely reason for this is that the rule simply does not or, at most, should be very rarely applied to a lawyer's personal dealings. This Court has established Rules of Professional Conduct in order to regulate the practice of law and should exercise great caution when asked to impose professional discipline for personal misdeeds. This case does not cross that threshold. I would not impose reciprocal discipline on the facts of this case.