**Wanda L. KING, et al., Appellants,**

v.

**George B. SORENSEN, et al., Respondents.**

**WD 80196**

Missouri Court of Appeals, Western District.

OPINION FILED: August 29, 2017

Application for Transfer to Supreme Court Denied September 26, 2017

Application for Transfer Denied November 21, 2017

---

Paul L. Redfearn and Michael D. Wallis, Independence, MO, Attorneys for Appellants.

Adam S. Davis, Kansas City, MO, Attorney for Respondents.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Victor C. Howard and Alok Ahuja, Judges

Mark D. Pfeiffer, Chief Judge

Wanda King, individually and as plaintiff ad litem for David King, Michael King, Tamara Nuckolls, Lea Ann Roach, and Tracy Rainey ("Plaintiffs"), appeals from the judgment of the Circuit Court of Jackson County, Missouri ("trial court"), entered following a jury verdict in favor of George B. Sorensen, M.D., and Saint Luke's Physician Specialists, L.L.C. ("Defendants") on Plaintiffs' claim of wrongful death and lost chance of recovery. We reverse and remand for further proceedings consistent with our ruling today.

**Factual and Procedural Background [1]**

David King ("King") died from complications after Dr. Sorensen performed surgery to repair a large paraesophageal hernia. King's family brought an action for wrongful death and lost chance of recovery against the Defendants.

---

[1]. In reviewing the trial court's denial of a motion for a new trial, an appellate court views the facts in the light most favorable to the trial court's ruling. *Stewart v. Partamian*, 465 S.W.3d 51, 56 (Mo. banc 2015).

The Circuit Court of Jackson County, Division 6, Voir Dire Jury Services provided a list of sixty-five random potential jurors for *King v. Sorensen*, 1416-CV23308, on June 20, 2016, the first day of trial. The name of the eleventh person on the list was identified as "J. Paul Willis." On a separate juror questionnaire, Mr. Willis listed his full name as "(John) Paul Willis." In subsequent testimony related to the motion for new trial, Mr. Willis confirmed that his first name is "John"; his middle name is "Paul"; and his last name is "Willis."

When the venire panel was seated, the trial court explained that the panel would be asked a series of questions to determine whether they have any personal interest in or knowledge of the case that would make it difficult for them to be fair and impartial. The trial court stated that their answers must be truthful and complete because it would be unfair to the parties in a trial for a panel member not to disclose something that should be disclosed when asked about it.

During voir dire, Plaintiffs' counsel emphasized that it was very important that the venire panel respond to the questions "because if for some reason you weren't to respond to a question that had been asked and give the information, sometimes that means we have to do this all over again. . . . And it is really hard on the system when cases have to be tried twice." Plaintiffs' counsel told the venire panel that he was going to ask them about their experience with lawsuits: "Now this is really an important part of the process. So I want you to be sure and search your mind. And the reason is that a lot of times people forgot to tell us about this part. And what happens is—I think the judge reminded us all of this before—what happens is we end up having to do the case over again."

When the venire panel was questioned about whether they or any member of their family had made a claim or filed a lawsuit for physical injuries, including workers' compensation claims, Venireperson Willis responded that he had a workers' compensation claim twenty years ago that was resolved to his satisfaction.

However, when the venire panel was later specifically questioned about "all types of litigation" and specifically "collection cases" that have been "brought maybe against you," Venireperson Willis did not respond. Later, it was discovered that, in fact, Venireperson Willis had been a defendant in a collection case in which an entity had sued Venireperson Willis for his alleged breach of contract in a case styled: *Champion Trim, Inc. v. Paul Willis, et al.*, 16CV91-32377. In his subsequent testimony about this nondisclosure, Venireperson Willis explained that he "didn't think of it as a collection lawsuit, even a lawsuit." In its ruling on the motion for new trial, the trial court expressly noted certain portions of Juror Willis's testimony that it deemed "honest" and "credible." The trial court expressed some skepticism, however, concerning Juror Willis's explanation for his nondisclosure of the collection lawsuit:

> . . . [J]uror Willis failed to disclose that he was a defendant in a 1991 breach of contract lawsuit over his alleged failure to pay for construction services regarding a new house. To be clear, Willis was personally served at his place of employment. Although the case was settled without a court appearance, Willis hired a lawyer to represent the interests of him and his wife.
>
> . . . [I]f Mr. Willis [had been] questioned regarding his failure to answer the prior litigation questions before the jury was sworn on Tuesday morning, the Court would very likely have found that the nondisclosure was intentional. In all like-

lihood, [J]uror Willis would have been excused from the jury in this case.

Instead, Venireperson Willis became a member of the jury. Nine of the jurors, one of whom was Mr. Willis, returned a verdict in favor of the Defendants. Mr. Willis signed the verdict form as "Paul Willis." On July 5, 2016, the trial court entered its judgment for Defendants on the jury's verdict.

Plaintiffs timely filed a motion for new trial. Plaintiffs alleged in pertinent part that they "were severely prejudiced by Juror Willis' nondisclosure of a prior lawsuit filed against him and his wife."

The trial court conducted an evidentiary hearing on Plaintiffs' new trial motion. At the hearing, the trial court questioned Plaintiffs' counsel regarding the "reasonable investigation" performed by his office to conduct a Case.net search. Plaintiffs' counsel explained that they had searched Juror Willis's name as "J. Paul Willis," but had not conducted a search using "Paul" as Juror Willis's first name. The collection lawsuit against Mr. Willis did not show up in the searches Plaintiffs' counsel performed.[2]

The trial court entered its order denying Plaintiffs' motion for new trial. The trial court concluded that Juror Willis's name was "Paul Willis" and that "counsel for Plaintiffs mistakenly used the incorrect first name" when conducting a Case. net search under the search for "J. Paul Willis." Accordingly, as relevant to this appeal, the trial court concluded that "Plaintiffs did not conduct a 'reasonable investigation' as required by Rule 69.025" and had thus waived any claim for relief per Rule 69.025.[3]

Plaintiffs timely appealed.

## Analysis

■ "This Court will not disturb the trial court's ruling on a motion for a new trial based on juror nondisclosure unless the trial court abused its discretion." *Johnson v. McCullough,* 306 S.W.3d 551, 555 (Mo. banc 2010) (citing *Wingate by Carlisle v. Lester E. Cox Med. Ctr.,* 853 S.W.3d 912, 917 (Mo. banc 1993)). *See also Stewart v. Partamian,* 465 S.W.3d 51, 56 (Mo. banc 2015) ("The standard of review for a trial court's order denying a motion

---

**2.** Defense counsel asserts that, by failing to file an affidavit outlining the nature of the Case.net search they conducted, plaintiffs' counsel violated Rule 69.025(f). We disagree. Defense counsel did not object in the trial court to the manner in which plaintiffs' counsel demonstrated the nature of the Case.net search they had conducted. Moreover, the only relevant aspects of plaintiffs' counsel's search is that (1) they conducted a Case.net search using the name "J. Paul Willis" provided by the circuit court, and (2) they did *not* conduct a search using "Paul" as Juror Willis's first name (which is apparently the only way in which the 1991 lawsuit would have been discovered). Neither of these features of plaintiffs' counsel's Case.net search is disputed.

**3.** Of note, at this same hearing, defense counsel confirmed to the trial court that the defense was aware of the collection lawsuit,

aware of Venireperson Willis's nondisclosure, and admitted that defense counsel consciously and strategically chose not to inform the trial court of the venireperson's nondisclosure before the jury was sworn. Even though Rule 69.025(d) mandates that, "[a] party who has reasonable grounds to believe that a prospective juror has failed to disclose that he or she has been a party to litigation *must so inform the court* before the jury is sworn," the trial court concluded that defense counsel was under no obligation to "so inform the court." Given our ruling today, we need not and do not reach this issue on appeal. However, we note that words such as "must" and "shall" have generally been interpreted by our courts as words dictating a mandatory—not discretionary—obligation. *See Christensen v. Am. Food & Vending Servs., Inc.,* 191 S.W.3d 88, 91 (Mo. App. E.D. 2006).

for a new trial is abuse of discretion."). On appeal, Plaintiffs argue that the trial court abused its discretion in finding that they had waived their right to challenge Mr. Willis's intentional nondisclosure of his litigation history. We agree.

### Waiver

"The Missouri Constitution guarantees civil litigants the right to a fair and impartial jury of twelve qualified jurors." *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 199 (Mo. App. W.D. 2012) (citing Mo. CONST. art. I, § 22(a)). "Even though three-fourths of the jury can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified jurors." *Id.* (internal quotation omitted). During voir dire examination, each venireperson has the duty "to fully, fairly and truthfully answer all questions" directed either to him individually or the panel generally so his qualifications may be determined and so that challenges may be intelligently exercised. *Beggs v. Universal C. I. T. Credit Corp.*, 387 S.W.2d 499, 503 (Mo. banc 1965).[4] "A prospective juror may not be the judge of his own qualifications." *Id.* A venireperson's intentional nondisclosure during voir dire of prior litigation, or unintentional nondisclosure that results in prejudice, warrants a new trial. *See Johnson*, 306 S.W.3d at 557 (*superseded by* Rule 69.025, *as recognized in Rupard v. Prica*, 412 S.W.3d 343, 347 n.6 (Mo. App. W.D. 2013)); *Brines By & Through Harlan v. Cibis*, 882 S.W.2d 138, 140 (Mo. banc 1994); *Larsen v. Union Pac. R.R. Co.*, 503 S.W.3d 213, 226 (Mo. App.

W.D. 2016); *Overlap, Inc. v. A.G. Edwards & Sons, Inc.*, 318 S.W.3d 219, 230 (Mo. App. W.D. 2010); *Fielder v. Gittings*, 311 S.W.3d 280, 291 (Mo. App. W.D. 2010); *Massey v. Carter*, 238 S.W.3d 198, 202 (Mo. App. W.D. 2007).

In *Johnson v. McCullough*, the Missouri Supreme Court directed that litigants should endeavor to prevent retrials by completing an early investigation into prospective juror nondisclosure by "us[ing] reasonable efforts to examine the litigation history on Case.net of those jurors selected but not empanelled and present to the trial court any relevant information prior to trial." 306 S.W.3d at 559. The court recognized the limitations of Case.net in that it is not an official record: "First, Case.net may contain inaccurate and incomplete information. Second, Case.net may have limited usefulness in searches involving common names or when a person's name has changed." *Id.* at 559 n.4.

Shortly after the *Johnson* decision, the Missouri Supreme Court adopted Rule 69.025 (effective January 1, 2011), which addresses juror nondisclosure:

(a) **Proposed Questions.** A party seeking to inquire as to the litigation history of potential jurors shall make a record of the proposed initial questions before voir dire. Failure to follow this procedure shall result in waiver of the right to inquire as to litigation history.

(b) **Reasonable Investigation.** For purposes of this Rule 69.025, a 'reasonable investigation' means review of Case. net before the jury is sworn.

---

4. The reason is obvious: *Voir dire* is a search for the truth of the backgrounds of the prospective jurors who will be called upon to deliver justice to the parties. " 'The essential purpose of *voir dire* is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges.' " *Keltner v. K–Mart Corp.*, 42 S.W.3d 716, 721 (Mo. App. E.D. 2001) (quoting *Pollard v. Whitener*, 965 S.W.2d 281, 286 (Mo. App. W.D. 1998)).

**(c) Opportunity to Investigate.** The court shall give all parties an opportunity to conduct a reasonable investigation as to whether a prospective juror has been a party to litigation.

**(d) Procedure When Nondisclosure Is Suspected.** A party who has reasonable grounds to believe that a prospective juror has failed to disclose that he or she has been a party to litigation must so inform the court before the jury is sworn. The court shall then question the prospective juror or jurors outside the presence of the other prospective jurors.

**(e) Waiver.** A party waives the right to seek relief based on juror nondisclosure if the party fails to do either of the following before the jury is sworn:

(1) Conduct a reasonable investigation; or

(2) If the party has reasonable grounds to believe a prospective juror has failed to disclose that he or she has been a party to litigation, inform the court of the basis for the reasonable grounds.

**(f) Post-Trial Proceedings.** A party seeking post-trial relief based on juror nondisclosure has the burden of demonstrating compliance with Rule 69.025(d) and Rule 69.025(e) and may satisfy that burden by affidavit. The court shall then conduct an evidentiary hearing to determine if relief should be granted.

In *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189 (Mo. App. W.D. 2012), this court recognized the narrow parameters of Rule 69.025, noting that "Rule 69.025 expressly limits the dictates of required background Internet searches on potential jurors to Case.net searches of a potential juror's litigation history." *Id.* at 202 n.12. "While the day may come that technological advances may compel our Supreme Court to re-think *the scope* of required 'reasonable investigation' into the background of jurors that may impact challenges to the veracity of responses given in voir dire *before* the jury is empaneled—that day has not arrived as of yet." *Id.* at 203 (first emphasis added).

Presently, our Missouri Supreme Court has defined the scope of a "reasonable investigation" simply as "review of Case.net before the jury is sworn." Rule 69.025(b). While Rule 69.025(b) specifically requires Case.net searches of prospective jurors, it neither specifies the extent of an attorney's research obligation nor instructs how searches are to be conducted. The Rule does not state whether attorneys are required to search the juror's name as provided by the trial court or whether a variant or alias of the name must also be searched. This is a case of first impression. No Missouri court has addressed the issue of what type of "review of Case.net" will be deemed "reasonable investigation" with regard to Rule 69.025. And our independent research has found no other state or federal case interpreting a court rule similar to Missouri's Rule 69.025.

 "[T]he rules of the Supreme Court of Missouri are reviewed *de novo*" because we interpret the rules by applying the same principles used for interpreting statutes. *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo. banc 2014). "[The] primary rule of interpretation is to apply the plain language of the rule at issue." *In re Hess*, 406 S.W.3d 37, 43 (Mo. banc 2013). The Missouri Supreme Court's intent "is determined by considering the plain and ordinary meaning of the words in the Rule." *Id.* (internal quotation omitted). "If the intent is clear and unambiguous by giving the language used its plain and ordinary meaning, then this [c]ourt is bound by that language and there is neither need nor reason to apply any other

rule of construction in interpreting the rule." *Id.*

■ We find that the language of Rule 69.025 is plain, ordinary, and unambiguous. The Rule requires a party to: "[c]onduct a reasonable investigation." The Rule defines a "reasonable investigation" as "review of Case.net before the jury is sworn." Rule 69.025(b). The Circuit Court of Jackson County, Division 6, Voir Dire Jury Services provided a list of the names of sixty-five random potential jurors on the morning of the first day of trial. The trial court gave the parties until noon on the second day of trial to complete the litigation research. The list of venirepersons provided to counsel by the trial court included "J. Paul Willis" as a potential juror, and Juror Willis's juror questionnaire listed his name as "(John) Paul Willis." Plaintiffs used the names *provided by the trial court* in the Case.net search template. Specifically, the litigation search by Plaintiffs was conducted for "J. Paul Willis" by entering "J" or "John" as the "first name," then "P" or "Paul" as the "middle name," and "Willis" as the "last name." [5] Plaintiffs' Case.net search did not reveal the lawsuit of *Champion Trim, Inc. v. Paul Willis, et al.*, 16CV91-32377. Instead, the relevant litigation history for "J. Paul Willis" was in the Case.net system under the erroneous "first name" of "Paul" and, therefore, was not discoverable when Plaintiffs searched under the "first name" as provided by the trial court.

Herein lies the problem with the trial court's conclusion that the plaintiffs' search was unreasonable: The first name of Mr. Willis *provided by the trial court* to counsel was "J" or "John," not "Paul." In fact, Mr. Willis himself subsequently clarified that his first name was "John" and not "Paul," but that he commonly refers to himself by his *middle name (i.e.*, Paul) and not his *first name (i.e.*, John). Thus, when the trial court's basis for its ruling of "unreasonableness" was that "counsel for Plaintiffs mistakenly used the incorrect first name" in its Case.net search (and the trial court's ruling is clear that the trial court believed the "first name" for Mr. Willis was "Paul"), it is the *trial court*, not *counsel for Plaintiffs*, that has incorrectly identified Mr. Willis's first name. And, where a litigant has performed a Case.net search by inserting the names *as provided to counsel by the trial court*, such a search simply cannot be deemed anything but "reasonable." Here, plaintiffs' counsel did just that and, accordingly, the search complied with the Rule 69.025(b) "reasonable investigation" requirement. It was an abuse of discretion for the trial court to conclude otherwise.

### Remedy

Because the Plaintiffs have not waived their right to seek relief based on juror nondisclosure as prescribed by Rule 69.025(e) and the trial court has abused its discretion in its ruling to the contrary, Plaintiffs' appeal is granted and relief is warranted.

■ A venire member has a duty during *voir dire* examination to give full, fair, and truthful answers to all questions asked so that his or her qualifications may be determined and challenges may be posed. *Johnson*, 306 S.W.3d at 555. "The

---

5. Though there is some confusion as to whether only initials or fully worded names were used for the "first name" and "middle name," there is no confusion in the record that whether a Case.net search was performed with a "first name" of "J" or "John" and a "middle name" of "P" or "Paul," *neither* search would have yielded a result that would have discovered the relevant litigation history that Juror Willis failed to disclose during *voir dire.*

duty to disclose is triggered only after a clear question has been asked." *Id.* Whether a question was sufficiently clear in context to have elicited the undisclosed information is a threshold issue that this court reviews *de novo. Id.* During *voir dire*, the venire panel was questioned whether they had been a party to litigation, specifically a legal claim for a collection matter, either as a plaintiff or a defendant. Counsel's question was narrow and unequivocally triggered Mr. Willis's duty to disclose. However, Mr. Willis remained silent. "Failure to answer a clear question is considered a nondisclosure." *Id.* at 557.

The record establishes that a nondisclosure occurred; Mr. Willis did not respond to counsel's clearly asked question regarding collection lawsuit litigation; Mr. Willis was clearly involved in such prior litigation.

 The distinction between intentional and unintentional nondisclosure is significant because it determines whether prejudice can be inferred from a nondisclosure. *Id.* "If the nondisclosure was unintentional, a new trial is not warranted unless prejudice resulted from the nondisclosure." *Id.* "On the other hand, bias and prejudice is presumed if a juror intentionally withholds material information." *Id.* "[Q]uestions and answers pertaining to a prospective juror's prior litigation experience are material." *Id.* (internal quotation omitted). "A finding of intentional concealment of material information has become tantamount to a per se rule mandating a new trial." *Id.* (internal quotation omitted).

Here, in its ruling below, the trial court expressly stated that were this topic properly before the trial court, the trial court "would very likely have found that the nondisclosure was intentional"; the court's statement as to what it "very likely" would have concluded falls short of a factual finding, however. Given our ruling today, upon remand, the issue of whether Juror Willis's nondisclosure was intentional or unintentional is properly before the trial court in its further necessary consideration of Plaintiffs' motion for new trial.

Upon remand, if the trial court finds that Juror Willis's nondisclosure was intentional, bias and prejudice must be presumed and a new trial ordered. If the trial court finds that the nondisclosure was unintentional, it must undertake an analysis as to whether Plaintiffs were prejudiced, in such a fashion necessitating a new trial, by Juror Willis's nondisclosure of the 1991 lawsuit.

### Conclusion

The judgment of the trial court is reversed, the cause is remanded, and the trial court is directed to further consider Plaintiffs' motion for new trial in a manner consistent with our ruling today.

Victor C. Howard and Alok Ahuja, Judges, concur.