SUPREME COURT OF MISSOURI
 en banc
JEANNE H. OLOFSON, ) Opinion issued July 22, 2021
 )
 Appellant, )
 )
v. ) No. SC98043
 )
SCOTT W. OLOFSON, in his Capacity )
as Personal Representative of the Estate of )
TOM W. OLOFSON, )
 )
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
 The Honorable Susan E. Long, Judge

 Jeanne Olofson (Wife) appeals from the judgment on the pleadings dismissing her

Rule 74.06(b) motion to set aside, for fraud, the judgment of dissolution of her marriage to

Tom Olofson (Husband) or, alternatively, the property division portion of the judgment.

After Wife filed her Rule 74.06(b) motion, but before the circuit court ruled on the motion,

Husband died, and the personal representative of his estate was substituted as the

respondent. The personal representative filed a motion for judgment on the pleadings,

which the circuit court sustained because it found Husband’s death abated and rendered

moot Wife’s Rule 74.06(b) motion. The circuit court also held Wife’s Rule 74.06(b)

motion is moot because the relief sought in the motion cannot be granted in that the
property alleged to be the subject of the fraud has been sold and there is no marital estate

to reallocate.

 The circuit court erred in finding Husband’s death abated the proceedings on Wife’s

Rule 74.06(b) motion. Wife’s Rule 74.06(b) motion seeks to vacate the dissolution

judgment for fraud related to the property division, an issue not personal to Husband, so

the doctrine of abatement is not applicable. The circuit court also erred in finding the

motion was moot because meaningful relief is available under Rule 74.06(b). If fraud is

proven, the relief that would be “upon such terms as are just” is the vacating of only the

portion of the dissolution judgment dividing the marital property while leaving the

dissolution of marriage intact. Neither Husband’s death nor the sale of marital property

after the dissolution judgment preclude the circuit court from readjudicating the division

of the marital property pursuant to section 452.330. 1 The circuit court’s judgment is

vacated, and the cause is remanded.

 Factual and Procedural Background 2

 Wife and Husband married in 1960 and had two children. In 2014, Wife filed for a

dissolution of the marriage. The only contested issue in the dissolution proceedings was

the property division. The single largest marital asset was the parties’ interest in Epiq

Systems, Inc., a software company purchased during the marriage using marital assets and

1
 All statutory citations are to RSMo 2016, unless otherwise stated.
2
 Under the standard of review for the circuit court’s grant of judgment on the pleadings,
the Court assumes the truth of the well-pleaded facts alleged in Wife’s Rule 74.06(b)
motion and states the facts accordingly. State ex rel. Nixon v. Am. Tobacco Co., 34 S.W.3d
122, 134 (Mo. banc 2000).

 2
debt. 3 Husband was Epiq’s chairman of the board of directors, CEO, and an ex officio

member of Epiq’s strategic alternatives committee. The strategic alternatives committee

was formed in September 2014 “to explore a full range of strategic and financial

alternatives, including among other things, acquisitions, divestitures, or a going-private or

recapitalization transaction, in order to determine a course of action that is in the best

interest of all shareholders.”

 After months of discovery and negotiation, Husband and Wife agreed to value the

Epiq stock at $13.50 per share and apportion 2,159,416 shares to Husband (the equivalent

of approximately $29 million) and 1,076,639 shares to Wife (approximately $14.5

million). 4 Husband was also to receive all Epiq stock options. Husband and Wife

submitted a separation and property settlement agreement to the circuit court in February

2016. The circuit court entered a judgment that incorporated the separation agreement and

dissolved the marriage in March 2016. Three months later, Epiq notified its shareholders,

including Wife, that OMERS/DTI submitted an offer to buy Epiq at $16.50 per share. Epiq

entered into an agreement to be acquired through DTI by OMERS, and the sale closed in

September 2016. As part of the sale, Husband received over $16 million in golden-

parachute benefits and payouts for his outstanding stock options and restricted stock

3
 The Epiq shares were owned solely in Husband’s name and by the Tom W. and Jeanne
H. Olofson Foundation.
4
 Under the settlement agreement, Husband agreed to assume all $16,106,806 of the marital
debt.

 3
awards. Pursuant to the sale, Epiq became a private company combined with DTI, and

both Husband’s and Wife’s shares were paid out in cash.

 In February 2017, Wife filed a Rule 74.06(b) motion to set aside the dissolution

judgment for fraud. Wife alleges Husband “deliberately misrepresented and failed to

disclose facts regarding Epiq’s strategic review process during the dissolution,” Husband

intended for her to rely on these misrepresentations, and she, in fact, relied on his

statements during settlement negotiations. Specifically, Wife alleges that during a

deposition in December 2015, Husband said there had been “no compelling offers” to

purchase Epiq and he planned to continue with the company. He represented at the parties’

settlement conference on January 7, 2016, that he had no new information to share

regarding the sale of Epiq, and later executed the parties’ separation agreement wherein he

represented he had “made a full disclosure concerning the nature and extent of the property,

assets, liabilities and financial conditions” and warranted that he had disclosed to Wife his

“respective properties and income.”

 Assuming the truth of Wife’s well-pleaded allegations pursuant to the standard of

review, Husband’s statements were false. He was personally pursuing potential buyers in

November 2015, potential buyers were performing due diligence in December 2015, and

OMERS/DTI, who became the ultimate buyer, made a non-binding preliminary bid of

$15.00 per share in January 2016, the time frame in which Husband and Wife were

negotiating the final terms of their settlement agreement. Nine days before Husband and

Wife submitted their separation agreement to the circuit court that valued the stock at

$13.50 per share, Epiq rejected the $15 per share offer because it undervalued Epiq. Then,

 4
within 21 days of the entry of the court’s dissolution judgment, Epiq received non-binding

indications of interest for the purchase of Epiq from three potential buyers, including the

ultimate buyer, with two of the non-binding indications of interest received within 14 days

of entry of the judgment.

 Wife did not learn this information during the dissolution proceeding because

Husband failed to disclose it, despite Wife’s discovery requests for non-public information

about Epiq that would have revealed sale negotiations were progressing, and failed to

update his answers to pattern interrogatories as required by 16th Judicial Circuit Local Rule

68.4.1.5. 5 Wife contends Husband’s dishonesty during his deposition, failure to disclose

information regarding OMERS/DTI despite Wife’s discovery requests, and failure to

update his interrogatory answers amounted to fraud. As a result of that alleged fraud, Wife

claims Husband received “a significantly greater portion of the marital estate worth

millions of dollars, culminating in a materially inequitable division.”

 On April 6, 2017, Husband filed suggestions in opposition to Wife’s motion,

denying her fraud allegations and asserting Wife’s motion had been filed unreasonably late.

Two days later, Husband died. Scott Olofson, Husband and Wife’s son and the personal

5
 Local Rule 68.4.1.5 provides, “All information requested in the above interrogatories and
document requests shall be updated within 15 days prior to trial if any changes occur prior
to the trial date except significant changes such as employment, income or expert witnesses
which should be updated immediately.” Missouri Supreme Court Rules also require parties
to supplement discovery “if the party learns that the response is in some material respect
incomplete or incorrect and if the additional or corrective information has not otherwise
been made known to the other parties during the discovery process or in writing.” Rule
56.01(e).

 5
representative of Husband’s estate, was substituted as respondent, pursuant to Rule

52.13(a)(1).

 The personal representative moved for judgment on the pleadings, asserting Wife’s

Rule 74.06(b) motion was abated and mooted by Husband’s death and barred by res

judicata and collateral estoppel. The circuit court entered judgment on the pleadings,

overruling Wife’s motion to set aside part or all of the dissolution judgment, and dismissed

the action with prejudice. Wife appealed, and this Court granted transfer after opinion by

the court of appeals. Mo. Const. art. V, sec. 10.

 The personal representative raises several procedural objections to review on the

merits. First, he asserts Wife’s claim that the circuit court may set aside only the property

division portion of the judgment while leaving the dissolution of marriage intact is a new

argument advanced on appeal and, therefore, is unpreserved. Second, he claims Wife’s

action is barred by res judicata and collateral estoppel because Wife had an opportunity to

litigate her claim of fraud in the dissolution proceeding. Finally, the personal

representative avers Wife’s Rule 74.06(b) motion should be dismissed as untimely. These

procedural claims are addressed first.

 I.

 A. Wife’s Claim for Vacating Property Division Preserved

 The personal representative first contends that Wife, in her Rule 74.06(b) motion,

did not properly preserve a claim for the relief of vacating only the property division of the

dissolution judgment because such claim for relief was neither presented to nor decided by

 6
the circuit court. He contends Wife sought monetary damages in the circuit court, so on

appeal she cannot seek the alternative remedy of setting aside only the property division.

 This argument is clearly refuted by the record. In her Rule 74.06(b) motion, Wife

asked the circuit court to “set aside the Judgment of Dissolution of Marriage, or, in the

alternative, set aside portions of the Judgment, so as to effectuate an equitable division of

the marital estate to include the value of the Epiq stock at $16.50 per share and the value

of Tom’s Golden Parachute Benefits.” She, again, articulated she was requesting this relief

in her suggestions in opposition to the personal representative’s motion for judgment on

the pleadings. Because Wife properly raised her claim that, upon proof of fraud, the court

may set aside only the division of the parties’ property and not affect the dissolution of

their marriage, she has preserved her claim of error for review.

 B. Res Judicata and Collateral Estoppel Not Applicable

 The personal representative next claims Wife’s Rule 74.06(b) motion is barred by

the doctrines of res judicata and collateral estoppel because she had “a full and fair

opportunity to litigate these issues” in the dissolution proceeding and is, therefore, “bound

by the final decree resolving them as with any final judgment.”

 Res judicata, or claim preclusion, “precludes relitigation of a claim formerly made,”

Chesterfield Vill., Inc. v. City of Chesterfield, 64 S.W.3d 315, 318 (Mo. banc 2002), and

“every point properly belonging to the subject matter of litigation and which the parties,

exercising reasonable diligence, might have brought forward at the time,” King Gen.

Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d

495, 501 (Mo. banc 1991). Unlike res judicata, collateral estoppel, also called issue

 7
preclusion, “operates only as to issues previously litigated but not as to matters not litigated

in the prior action though such might properly have been determined.” Id. at 500 (emphasis

omitted).

 Contrary to the personal representative’s contentions, “the doctrines of collateral

estoppel and res judicata apply only in a second, subsequent lawsuit.” State ex rel. Cullen

v. Harrell, 567 S.W.3d 633, 641 n.5 (Mo. banc 2019). Because Wife filed her Rule

74.06(b) motion in the original dissolution action, it is not considered a separate,

subsequent lawsuit for purposes of res judicata and collateral estoppel. See id. at 638 n.2

(holding wife’s motion filed more than a year after final judgment could not be considered

an independent action because it was filed in the original dissolution action). Therefore,

the doctrines of res judicata and collateral estoppel do not apply to Wife’s motion, filed in

the original dissolution action, to set aside the judgment for fraud. 6 After all, a Rule

74.06(b) motion seeks “to set aside an otherwise final judgment which, but for equity,

would not be subject to reconsideration because of the doctrine of res judicata.” Sanders

v. Ins. Co. of N. Am., 904 S.W.2d 397, 401 (Mo. App. 1995).

 C. Timeliness Not Raised in Motion for Judgment on the Pleadings

 Finally, the personal representative asks this Court to affirm the dismissal of Wife’s

Rule 74.06(b) motion because she allegedly failed to file her motion within a reasonable

time after entry of the final judgment of dissolution, as required by Rule 74.06(c).

6
 In the alternative to setting aside the judgment for fraud under Rule 74.06(b), Wife also
claimed in the circuit court that her Rule 74.06(b) motion should be treated as an
independent action for money damages for fraud. The circuit court, however, correctly
rejected this claim, and it is not raised on appeal.

 8
Although Husband raised this concern in his suggestions in opposition to Wife’s motion,

the personal representative did not include this argument in his motion for judgment on the

pleadings. When reviewing the grant of a motion for judgment on the pleadings, “this

Court considers solely whether the grounds raised in the motion supported dismissal,” City

of Lake St. Louis v. City of O’Fallon, 324 S.W.3d 756, 759 (Mo. banc 2010); therefore,

this Court need not address this unpreserved claim.

 Finding no bar to review on the merits, the Court may review whether the circuit

court erred in sustaining the personal representative’s motion for judgment on the

pleadings.

 II.

 The circuit court’s judgment on the pleadings was based, at least in part, on its

finding that husband’s death abated Wife’s Rule 74.06(b) motion and also rendered the

proceeding moot because, if the judgment were set aside in its entirety, any further

dissolution proceedings would abate due to Husband’s death. The circuit court also found

Wife’s claim for the reallocation of the marital estate was moot because the marital estate

no longer exists. Finding the controversy moot, the circuit court concluded it lacked

subject matter jurisdiction and dismissed Wife’s motion with prejudice.

 In her single claim of error, Wife claims the circuit court erred in holding Husband’s

death abated and rendered moot her Rule 74.06(b) motion because the relief available

under Rule 74.06(b) includes setting aside only the portion of the dissolution judgment

obtained by fraud – the division of the marital property. In support of this claim of error,

Wife argues her Rule 74.06(b) motion did not abate because Husband died after the decree

 9
of dissolution was entered and a dissolution action abates upon the death of a party only

when the death occurs prior to the circuit court dissolving the marriage. She further asserts

the circuit court erred in ruling there was no justiciable controversy because it found the

marital estate no longer exists. Finally, she argues, upon a finding of fraud pursuant to

Rule 74.06(b)(2), the circuit court has authority to set aside only the part of the dissolution

judgment relating to the property division as an alternative to setting aside the judgment in

its entirety.

 A. Standard of Review

 This Court reviews a circuit court’s ruling on a motion for judgment on

the pleadings de novo. Woods v. Mo. Dep’t of Corr., 595 S.W.3d 504, 505 (Mo. banc

2020). In reviewing a grant of judgment on the pleadings, the Court must decide “whether

the moving party is entitled to judgment as a matter of law on the face of the pleadings.”

Emerson Elec. Co. v. Marsh & McLennan Cos., 362 S.W.3d 7, 12 (Mo. banc 2012)

(internal quotation omitted). “The well-pleaded facts of the non-moving party’s pleading

are treated as admitted for purposes of the motion.” Eaton v. Mallinckrodt, Inc., 224

S.W.3d 596, 599 (Mo. banc 2007). Consequently, the circuit court’s judgment on the

pleadings in favor of the personal representative will be affirmed “only if the facts pleaded

by the petitioner, together with the benefit of all reasonable inferences drawn therefrom,

 10
show that petitioner could not prevail under any legal theory.” Emerson Elec. Co., 362

S.W.3d at 12 (internal quotation omitted). 7

 B. Abatement Is Not Applicable

 Wife claims the doctrine of abatement is not applicable to the circumstances of this

case because a dissolution action abates upon the death of a party only when the parties’

marriage has not been dissolved at the time of death. Both Wife and the personal

representative focus on whether the underlying dissolution action abated upon Husband’s

death. The first inquiry, however, should be whether the death of a party causes abatement

of a proceeding on a motion for relief from a judgment under Rule 74.06(b). Broadly

speaking, abatement is “the destruction of the cause of action.” In re Thomasson, 159

S.W.2d 626, 628 (Mo. 1942). Historically, courts applying the rule of abatement followed

the common law maxim of actio personalis moritur cum persona. See Cummins v. Kan.

City Pub. Serv. Co., 66 S.W.2d 920, 940 (Mo. banc 1933). Under the maxim, “the death

of the sole plaintiff or of the sole defendant before final judgment abated any personal

7
 The personal representative argues an order overruling a motion for relief under Rule
74.06(b) may be reviewed only for an abuse of discretion. For support, he cites
McCullough v. Commerce Bank, which held, “The trial court is vested with broad
discretion when acting on a motion to vacate a judgment pursuant to Rule 74.06 and [the
court of appeals] will not interfere with that action unless the record convincingly
demonstrates an abuse of discretion.” 349 S.W.3d 389, 392 (Mo. App. 2011). However,
the court of appeals in McCullough was reviewing a judgment entered on the merits of a
Rule 74.06(b) claim where the circuit court had discretion in its ruling. See id. at 392-93
(noting the trial court conducted an evidentiary hearing and denied relief based on the
plaintiffs’ failure to carry their burden of proof). Here, the circuit court’s ruling was on a
motion for judgment on the pleadings, so the question is whether the moving party was
entitled to judgment as a matter of law. That determination is subject to de novo review.
Woods, 595 S.W.3d at 505.

 11
action.” Gerling v. Baltimore & Ohio R.R. Co., 151 U.S. 673, 697 (1894). Said differently,

a cause of action that was “in its nature personal,” such as breach of a promise to marry,

did not survive the death of a party; it abated. Henshaw v. Miller, 58 U.S. 212, 219 (1854).

If, however, an action affected “primarily property and property rights” and an injury to

the person was merely incidental, the action did not abate with the death of a party.

Breeden v. Hueser, 273 S.W.3d 1, 11 (Mo. App. 2008) (internal quotation omitted).

 The rationale behind the rule of abatement is pragmatic. An action involving purely

personal issues abates with the death of a party, except where otherwise provided by

statute, because “the need to redress purely personal wrongs ceases to exist[.]” Id. (internal

quotation omitted). By contrast, an action that primarily concerns property or property

interests and only incidentally implicates personal issues does not abate with the death of

a party because such an action can achieve its purpose after death. Id. Similarly, section

537.010 provides that wrongs done to property interests survive the death of the

wrongdoer, 8 and a fraud claim that involves “a loss of money due to the fraudulent actions

of the defendant[]” is a such a wrong. Breeden, 273 S.W.3d at 13.

8
 Section 537.010 provides:

 Actions for wrongs done to property or interests therein may be brought
 against the wrongdoer by the person whose property or interest therein is
 injured. If the person whose property or interest therein is injured is dead,
 the action survives and may be brought against the wrongdoer by the person
 appointed as fiduciary for the estate of the deceased person. If the wrongdoer
 is dead, the action also survives and may be brought and maintained in the
 manner set forth in section 537.021. Such actions shall be brought and
 maintained in the same manner and with like effect in all respects as actions
 founded upon contracts.

 12
 Because Rule 74.06(b) is available to provide relief in all civil matters, whether a

proceeding on a Rule 74.06(b) motion abates depends on the nature of the claims presented

in the motion, i.e., whether it requires adjudication of issues personal to the decedent. In

this case, the issue before the circuit court was whether Husband defrauded Wife and

consequently diminished her share of the marital estate. “Actions for fraud and deceit are

considered property torts and [are] ‘more than merely personal’ when they involve matters

diminishing the property of the person defrauded.” Gremminger v. Mo. Lab. & Indus. Rels.

Comm’n, 129 S.W.3d 399, 403 (Mo. App. 2004) (quoting Houston v. White, 27 S.W.2d

772, 775 (Mo. App. 1930)). Consequently, a proceeding involving a claim of fraud in the

property division of a dissolution does not abate upon the death of a party, even if the death

occurs after final judgment, contrary to the assertions in Judge Fischer’s dissenting opinion.

 This has long been the law. In Richmond v. Richmond, a plaintiff claimed her

husband, before his death, had obtained a dissolution of their marriage without her

knowledge by falsely claiming she lived out of state and issuing notice by publication. 225

S.W. 126, 127 (Mo. App. 1920). Although the court of appeals affirmed the circuit court’s

denial of relief, the court stated, albeit in dicta:

 Shortly after the divorce was granted to plaintiff, he died, which fact [sic] left
 it unnecessary to set aside the divorce, in so far as concerned a separation
 between them as husband and wife. But, if it affected her rights in any
 property left by him at his death, she could have it annulled for the fraud
 charged.

Id. This Court affirmed the principle in 1962, holding that “[a]n equity court has the power

to vacate a decree of divorce for extrinsic fraud in the procurement of the

 13
judgment . . . notwithstanding one of the parties has died[.] The divorce judgment in such

cases is voidable.” Hemphill v. Quigg, 355 S.W.2d 57, 62-63 (Mo. 1962).

 Likewise, in Anderson v. Dyer, years after a final dissolution judgment had been

rendered, the husband died, and the wife subsequently filed a motion to set aside the

judgment for fraud. 456 S.W.2d 808, 810 (Mo. App. 1970). The court held the wife could

set aside the judgment, notwithstanding the death of the husband, if “setting aside the

divorce affects or will determine property rights.” Id. at 814. Because the wife presented

evidence that setting aside the divorce could affect her interest in the husband’s veteran’s

and social security benefits, the court reversed and remanded for a new trial on the motion

to set aside the judgment for fraud. Id. at 814-15.

 Richmond, Hemphill, and Anderson demonstrate that proceedings to set aside a

dissolution judgment for fraud after the judgment is final are cognizable and do not abate,

as a matter of law, because one of the parties to the marriage has died. Contrary to the

assertions in Judge Fischer’s dissenting opinion, there is no legal authority supporting a

rule that the death of a party requires abatement of all proceedings after a dissolution decree

and division of marital property are final, regardless of the nature of the proceedings. The

cases it cites do not so hold. They are cases where courts have applied the general

principles of abatement and found the proceedings or issues in the proceedings pertained

to personal matters and abated for that reason. The issue, instead, is whether there is a right

to relief from a final judgment and whether the authorized proceeding to enforce that right

abates on the death of a party due to the nature of the issues in the proceeding.

 14
 Wife’s Rule 74.06(b) motion is limited to adjudication of whether Husband

committed fraud as related to the division of property in their underlying dissolution action.

Her claim of fraud does not require the adjudication of personal rights, such as the marital

status of the parties, so the possible abatement of the underlying dissolution proceeding is

relevant only when considering the relief available after a finding of fraud. Here, Wife’s

Rule 74.06(b) motion includes a prayer to set aside the provisions in the dissolution

judgment dividing property without reinstating the marriage. If that relief were granted,

she would be in the position of litigating the distribution of marital property after a

dissolution has been ordered. Neither the Rule 74.06(b) proceeding for relief from the

dissolution judgment nor a subsequent proceeding on remand to readjudicate the division

of marital property (but not readjudicate the issue of marital status) would abate due to

Husband’s death.

 Rather than recognize the proceeding on Wife’s Rule 74.06(b) motion abates under

the same rules as any other action, Judge Fischer’s dissenting opinion declares the

proceeding abated because the circuit court entered a final dissolution judgment that

divided the marital property prior to Husband’s death. For support, Judge Fischer’s

dissenting opinion relies on Clark v. Clevenger, 978 S.W.2d 511 (Mo. App. 1998), and

Winters v. Cooper, 827 S.W.2d 233 (Mo. App. 1991). However, neither Clark nor Winters

involve abatement in a proceeding for relief from a final judgment for fraud but rather

involve abatement in proceedings on statutorily authorized motions to modify a final

dissolution judgment. Clark, 978 S.W.2d at 512; Winters, 827 S.W.2d at 234. Clark

involved the abatement of a motion to modify child support after the death of a party-

 15
parent. 978 S.W.2d at 512. Decretal obligations to pay future child support expire with

the obligor and cannot be enforced against the obligor’s estate. Fower v. Fower Estate,

448 S.W.2d 585, 587 (Mo. 1970). Winters involved the abatement of a motion to modify

child custody after the death of a party-parent. 827 S.W.2d at 234. Child custody also is

an issue personal to the parties. Marriage of Carter v. Arnett, 794 S.W.2d 321, 322

(Mo. App. 1990).

 Each case involved rights and obligations personal to the parties, and in each case,

those personal issues abated. Although Clark and Winters did not articulate the details of

the abatement doctrine, their rulings were proper applications of the abatement doctrine to

the nature of the claims at issue. Judge Fischer’s dissenting opinion takes the procedural

circumstances of these modification cases and presents them as holdings that modification

proceedings must abate on the death of a party because the underlying dissolution judgment

is final and not subject to appeal or a motion for new trial, a proposition not raised or

adjudicated in the cases. Contrary to Judge Fischer’s dissenting opinion’s assertion, Clark

and Winters are not authority for the proposition that a motion to vacate the property

division portion of a dissolution judgment pursuant to Rule 74.06(b) categorically abates

upon the death of a party if the underlying dissolution judgment is final and not subject to

appeal or a motion for new trial.

 Because the proceedings on Wife’s Rule 74.06(b) motion alleging Husband’s fraud

did not involve issues personal to the parties, the circuit court erred in holding the

proceedings abated upon husband’s death. In so ruling, the circuit court recognized that,

if Wife were to prove the alleged fraud, setting aside the entire dissolution judgment would

 16
vacate the dissolution of their marriage and put the parties in the position of litigating the

personal issue of marital status. Consequently, proceedings in the underlying dissolution

case would abate due to Husband’s death, and the circuit court would be unable to

effectuate an equitable division of property. The circuit court was correct that if Wife were

to prove fraud, effective relief from that fraud could not be accomplished by setting aside

the entire dissolution judgment. The circuit court erred, however, in finding alternative

relief was not available.

 C. Rule 74.06(b) Allows Relief from Portion of a Final Judgment

 After determining that Husband’s death precludes setting aside the entire dissolution

judgment, the circuit court then considered whether it could grant the alternative relief

sought by Wife of vacating only the property division. The circuit court expressly held

that, should Wife prevail on her Rule 74.06(b) motion, the only effective relief available to

Wife would be for the circuit court “to set aside that part of the judgment dividing marital

property entirely and reallocate the marital estate taking into account all of the factors set

forth in section 452.330.1.” In opposition to the motion for judgment on the pleadings,

Wife stated:

 Petitioner seeks to set aside the Judgment which allocated marital property
 so as to effectuate an equitable distribution of the same. Petitioner does not
 seek to change the status of the divorce of the parties, nor is such a change in
 status required as resolution to Petitioner’s Motion to Set Aside the
 Judgment.

While Wife is seeking an allocation of marital property to effectuate an equitable

distribution of the increased value of the Epiq stock and Husband’s $16 million golden

parachute benefits, she is not suggesting that the court vacate only the portion of the

 17
property division relating to the interests in Epiq stock. Rather, she is requesting that the

circuit court set aside the entire property division and then make a new equitable

distribution of the marital estate in light of the sale of Epiq at $16.50 per share and

Husband’s golden-parachute benefits. Whether the relief Wife seeks can be granted

depends on whether Rule 74.06(b) authorizes a court to set aside only the provisions of a

dissolution judgment dividing marital property and debts.

 The circuit court found, however, that a new division of the marital estate after a

finding of fraud would be a prohibited modification of the original division of marital

property. Wife claims she is not seeking a “modification” but rather relief from the

property division in the dissolution decree under Rule 74.06(b) because it was induced by

fraud. Wife is correct that setting aside the property division for fraud would not be a

statutorily prohibited modification.

 Generally speaking, a circuit court’s “power to modify a judgment ceases when the

judgment becomes final.” See Harrell, 567 S.W.3d at 639. In dissolution proceedings,

however, statutes authorize courts to modify some issues decided in a final dissolution

judgment in response to changing circumstances. See Leventhal v. Leventhal, 629 S.W.2d

505, 507 (Mo. App. 1981); sections 452.410 (custody); 452.400 (visitation rights); 452.370

(maintenance and support). The purpose is to change the terms of the original judgment in

response to new facts and circumstances that would make the judgment’s original terms

unreasonable. See, e.g., section 452.370.1; see also Marriage of Lindhorst v. Lindhorst,

347 S.W.3d 474, 476 (Mo. banc 2011) (recognizing the provisions of any judgment

respecting maintenance or support may be modified in response to new circumstances that

 18
make the provisions unreasonable). A new proceeding is initiated, albeit in the original

cause, to raise and adjudicate the effect of new facts. See State ex rel. Dreppard v. Jones,

215 S.W.3d 751, 752 (Mo. App. 2007). Because no statute provides for the modification

of a division of marital property and, additionally, sections 452.330.5 and 452.360.2

specifically prohibit it, “[o]rders affecting the distribution of marital property are not

modifiable.” See Leslie v. Leslie, 827 S.W.2d 180, 182 (Mo. banc 1992). This statutory

prohibition against modification does not mean a court cannot relieve a party from the

division of marital property pursuant to Rule 74.06(b). It means the distribution of marital

property is subject to the general rule that circuit courts cannot modify judgments after they

become final. Relief can be granted from a final dissolution judgment, like any other final

civil judgment, for the reasons stated in Rule 74.06(b). See Rule 41.01; see also Reimer v.

Hayes, 365 S.W.3d 280, 283 (Mo. App. 2012); see also Chrun v. Chrun, 751 S.W.2d 752,

755 n.1 (Mo. banc 1988).

 The relief available pursuant to Rule 74.06(b) is determined from the language of

the rule:

 On motion and upon such terms as are just, the court may relieve a party or
 his legal representative from a final judgment or order for the following
 reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud
 (whether heretofore denominated intrinsic or extrinsic), misrepresentation,
 or other misconduct of an adverse party; (3) the judgment is irregular; (4) the
 judgment is void; or (5) the judgment has been satisfied, released, or
 discharged, or a prior judgment upon which it is based has been reversed or
 otherwise vacated, or it is no longer equitable that the judgment remain in
 force.

(Emphasis added). The Court interprets its rules using principles similar to those employed

in interpreting statutes, “with the difference being that this Court is attempting to give effect

 19
to its own intent.” In re Hess, 406 S.W.3d 37, 43 (Mo. banc 2013). The best evidence of

the Court’s intent is the plain language of the rule at issue. State ex rel. Vacation Mgmt.

Sols., LLC v. Moriarty, 610 S.W.3d 700, 702 (Mo. banc 2020).

 The language governing the relief available is: “[U]pon such terms as are just” a

court may “relieve” a party from a final judgment or order. Rule 74.06(b). The plain and

ordinary meaning of this language gives courts the discretion to fashion relief as equity

demands. If a court were limited to vacating a judgment in its entirety, the phrase “upon

such terms as are just” would be meaningless. This clearly refutes the personal

representative’s and Judge Fischer’s dissenting opinion’s narrow interpretation that limits

available relief to setting aside the entire judgment because it fails to give meaning to each

word of the rule. See Middleton v. Mo. Dep’t of Corr., 278 S.W.3d 193, 196 (Mo. banc

2009) (“[I]t commonly is understood that each word, clause, sentence, and section of a

statute should be given meaning.”).

 The law allows for the correction of errors after a judgment is final either through a

direct appeal or through proceedings after direct review is exhausted. In criminal cases,

the rules provide for postconviction proceedings. See Rules 24.035 & 29.15. In civil cases,

inter alia, Rule 74.06(b) provides for relief after direct review on the limited grounds

articulated therein. Like the disposition of an appeal, relief from a judgment under Rule

74.06(b) can be – and should be – afforded by vacating the portion of the judgment tainted

by fraud. The difference between error-correcting on direct appeal and relief from a

judgment pursuant to Rule 74.06(b) lies only in the scope of errors that can be considered

and when error can be raised. In the context of a proceeding under Rule 74.06(b), just as

 20
in the context of a direct appeal, it is unnecessary and inefficient to vacate and,

consequently, cause a lower court to readjudicate, issues concluded by correct and

untainted portions of the judgment. By providing relief from a judgment “upon such terms

as are just,” the rule recognizes courts have discretion to relieve a party from a portion of

a judgment tainted by fraud and leave untainted portions intact.

 As in this case, when the original judgment is incorrect or unfair due to fraud,

whether on direct appeal or pursuant to Rule 74.06(b), granting a remedy that corrects the

error or unfairness is the purpose of the proceeding. After either a direct appeal or a

proceeding pursuant to Rule 74.06(b), issues resolved in the original judgment are

readjudicated on remand, and the circuit court readjudicates only those portions of the

judgment that have been vacated or reversed. That process would be frustrated by a

requirement that the entire judgment be vacated. This is apparent in a dissolution case, like

this one, where it would be nonsensical to vacate orders for child custody, support, and

visitation when the fraud affects only the division of property.

 Additionally, in considering the relief available under Rule 74.06(b), this Court is

not writing on a clean slate. It expressly rejected a narrow interpretation of the relief

available under Rule 74.06(b) decades ago. In Kibbons v. Union Electric Co., the Court

was presented with – and rejected – the argument that the word “relieve” in Rule 74.06(b)

contemplates “only the power to set aside.” 823 S.W.2d 485, 491 (Mo. banc 1992). It

found the common meaning of the word “relieve” is consistent with the term “modify” and

expressly held “Rule 74.06(b) permits a trial court to modify a judgment.” Id. Kibbons is

consistent with a statement in Audsley v. Allen, decided mere months after Rule 74.06 was

 21
adopted, that an irregular judgment is “subject to modification under rule 74.06(b).” 774

S.W.2d 142, 146 n.5 (Mo. banc 1989) (emphasis added). The holding in Kibbons is also

consistent with this Court’s recent characterization of the relief available under Rule

74.06(b): “Rule 74.06(b) . . . is a mechanism by which a party can seek relief from or

modification of a judgment on the basis of mistake, fraud, irregularity, voidability, or

satisfaction.” Harrell, 567 S.W.3d at 638-39 (emphasis added). Under the plain language

of Rule 74.06(b), relief is not limited to setting aside the judgment, let alone setting aside

the entire judgment. Instead, under Rule 74.06(b), a court can give relief upon such terms

as are just, which includes amending provisions in a judgment and setting aside part or all

of a judgment. To hold otherwise ignores the plain meaning of the word “relieve” and

renders meaningless the phrase “upon such terms as are just.”

 Judge Fischer’s dissenting opinion asserts Kibbons has no application because it

dealt with a different provision in Rule 74.06(b). Specifically, the motion in Kibbons dealt

with Rule 74.06(b)(3) seeking relief from an irregular judgment unlike Wife’s motion

under Rule 74.06(b)(2) which seeks relief based on fraud. But Rule 74.06(b) provides a

court may “relieve a party or his legal representative from a final judgment or order for the

following reasons” and it then sets out in subparts the various reasons for which a court

may relieve a party from a judgment. Listed among the reasons for which a party may be

relieved from a judgment are both fraud and that the judgment is irregular. The language

authorizing relief in subsection (b) applies equally to all its subparts. There is not one

meaning of “relieve” for irregular judgments and a different meaning of “relieve” for fraud.

 22
The relief available under Rule 74.06(b) – whatever is just and falls within the ordinary

definition of “relieve” – applies uniformly.

 Kibbons applied the common meaning of “relieve,” which is “to ease of an

imposition, burden, wrong or oppression by judicial interposition,” and found that

modification fell within that meaning. Kibbons, 823 S.W.2d at 491. The meaning of

“relieve” in Rule 74.06(b) did not change between 1992, when Kibbons was decided, and

today. Setting aside the provisions of the judgment dealing with property rights falls within

the ordinary definition of “relieve”; it eases an imposition, burden, wrong, or oppression

by judicial interposition. Therefore, setting aside the provisions of the dissolution dealing

with property rights, while leaving the dissolution of marriage intact, is within the relief

from a final judgment or order authorized by Rule 74.06(b).

 The personal representative, nevertheless, argues the circuit court was correct to

find Rule 74.06(b) does not authorize it to set aside less than the entire dissolution

judgment, citing court of appeals cases contrary to Kibbons. Primarily, the personal

representative relies on Spicuzza v. Spicuzza, 886 S.W.2d 660, 660-61 (Mo. App. 1994), in

which the petitioner filed a motion pursuant to Rule 74.06(b) to set aside, vacate, amend

or modify a decree of dissolution because the parties’ failure to include her state teacher’s

retirement in the settlement agreement rendered it unconscionable.

 While the court of appeals in Spicuzza correctly held unconscionability is not a basis

in Rule 74.06(b) for relief from a final judgment, it further ruled that Rule 74.06 (b) “makes

no provision for the amendment or modification of a judgment, or for relief from part of a

judgment.” Id. (emphasis added). This ruling was in direct conflict with Kibbons, which

 23
was error because the court of appeals is bound by the constitution to follow this Court’s

most recent controlling decision. Mo. Const. art. V, sec. 2. Yet the court of appeals did

not acknowledge Kibbons or make any effort to distinguish its holding. As Spicuzza offers

no analysis of Rule 74.06(b)’s text or the substantive case law the rule effectuates, it

provides no reason for this Court to reexamine its holding in Kibbons.

 Despite the defects in the Spicuzza holding, the court of appeals has cited it in other

dissolution cases. See, e.g., Young v. Young, 273 S.W.3d 86, 88 (Mo. App. 2008);

Marriage of Rolfes v. Rolfes, 187 S.W.3d 355, 357-58 (Mo. App. 2006); Marriage of

Ulmanis v. Ulmanis, 23 S.W.3d 814, 818 (Mo. App. 2000); Settles v. Settles, 913 S.W.2d

101 (Mo. App. 1995). Other court of appeals decisions, however, have permitted circuit

courts to set aside only portions of a prior judgment. In Marriage of Dooley v. Dooley, 15

S.W.3d 747, 758 (Mo. App. 2000), the court of appeals held a default judgment should

have been set aside “as to child custody and support” because the circuit court lacked

subject matter jurisdiction over those issues when it entered the underlying dissolution

judgment but that the remainder of the judgment should not be set aside. Similarly, in

Essig v. Essig, 921 S.W.2d 664, 667 (Mo. App. 1996), the court of appeals affirmed a

judgment setting aside only the maintenance and property division provisions of a

dissolution judgment.

 The correctness of the conclusion in Kibbons with respect to the relief available

under language in Rule 74.06(b) is supported by federal precedent applying Federal Rule

of Civil Procedure 60(b), which was the model for Rule 74.06(b). Platt v. Platt, 815

S.W.2d 82, 83 (Mo. App. 1991). While not binding, federal cases construing a rule this

 24
Court subsequently adopted with virtually identical language are entitled to significant

consideration. Buemi v. Kerckhoff, 359 S.W.3d 16, 23 (Mo. banc 2011).

 Federal cases hold that, under FRCP 60(b), parties may seek relief from part of a

judgment. See, e.g., Walker v. Astrue, 593 F.3d 274, 279 n.5 (3d Cir. 2010) (“[W]e

acknowledge that there are instances when attorney fees are awarded as part of the original

judgment. In such cases, counsel may appropriately seek to modify them via Rule 60(b).”);

Flowers v. S. Reg’l Physician Servs., Inc., 286 F.3d 798, 802 (5th Cir. 2002) (“[T]hat part

of the judgment that formed the basis of the granting of attorney’s fees was vacated and

Rule 60(b)(5) was appropriate.”); Dist. of Columbia v. Stackhouse, 239 F.2d 62, 65 (D.C.

Cir. 1956) (“[T]he court could, under Fed. R. Civ. P. 60(b)(6), relieve appellee from that

part of the judgment ruling that she was not a resident of the District of Columbia.”).

 The plain language of Rule 74.06(b) authorizes a circuit court to vacate a portion of

a judgment as relief from the final judgment. 9 As relevant here, Rule 74.06(b)(2)

authorizes the circuit court to vacate only the property division of the dissolution judgment

if Wife establishes Husband committed fraud resulting in a materially inequitable division

of the marital estate. The circuit court erred in holding Rule 74.06(b) authorized it only to

set aside the dissolution judgment in its entirety.

9
 Spicuzza, Young, Rolfes, Ulmanis, Settles, and other cases holding Rule 74.06(b) makes
no provision for relief from part of a judgment are overruled to the extent they conflict with
this opinion.

 25
 D. Action Is Not Moot

 Finally, the circuit court also erred in holding that, because the marital estate no

longer exists in the same form it did when it was originally distributed, Wife’s motion was

moot. The circuit court rightly noted, that if Wife prevailed, “the only relief available to

[her] would be for the Court to set aside that part of the judgment dividing marital property

entirely and reallocate the marital estate taking into account all of the factors set forth in §

452.330.1.” It wrongly concluded, however, that “where, as here, one party has died and

there is no marital estate to allocate, such relief is impossible” and, therefore, the

controversy was moot.

 “A case is moot when the question presented for decision seeks a judgment upon

some matter which, if the judgment was rendered, would not have any practical effect upon

any then existing controversy.” D.C.M. v. Pemiscot Cnty. Juvenile Office, 578 S.W.3d

776, 780 (Mo. banc 2019) (internal quotation omitted). A party’s death after a judgment

or order of dissolution or decree of legal separation does not prevent a court from dividing

the spouses’ property. Linzenni v. Hoffman, 937 S.W.2d 723, 726 (Mo. banc 1997);

Cregan v. Clark, 658 S.W.2d 924, 927 (Mo. App. 1983). Therefore, if the marriage has

been dissolved or the parties have been declared legally separated, one party’s death does

not render a marital property dispute moot. Linzenni, 937 S.W.2d at 726. Rather, “when

property rights of the parties are involved, the parties are entitled to have [their property

rights] decided though one of the parties has died.” Cregan, 658 S.W.2d at 927; accord

Fischer v. Seibel, 733 S.W.2d 469, 472 (Mo. App. 1987). Contrary to the circuit court’s

findings, Husband’s death does not moot the proceedings, and the personal representative

 26
of his estate has been substituted as a party to litigate the issues in Husband’s place,

including division of marital property on remand if fraud is proven.

 The other circumstances the circuit court held precluded effectual relief, if the

property division were to be vacated under Rule 74.06(b), were changes in the form of

marital property and the passage of time. Specifically, the circuit court found it would be

unable to grant Wife relief because the shares of Epiq stock no longer exist and, therefore,

could not be divided. The circumstances identified by the circuit court as precluding

effectual relief are no different from the circumstances when a division of property is

reversed on appeal and the case remanded for retrial of the property division. Courts

frequently account for changes in the property and parties’ circumstances since the date of

the initial trial and judgment. See, e.g., Hanson v. Hanson, 738 S.W.2d 429, 438 (Mo.

banc 1987); Marriage of Miller v. Miller, 806 S.W.2d 516, 518 (Mo. App. 1991); Puga v.

Puga, 730 S.W.2d 567, 570 (Mo. App. 1987).

 The sale of Epiq does not preclude effectual relief. “[W]hen an order or judgment

is vacated, the previously existing status is restored and the situation is the same as though

the order or judgment had never been made.” State ex rel. Off. of Pub. Couns. v. Pub. Serv.

Comm’n of Mo., 266 S.W.3d 842, 843 (Mo. banc 2008). If Wife proves fraud,

readjudication of the division of marital property would require the circuit court to divide

the marital estate as if it were dividing it for the first time. The circuit would be required

to determine the property possessed by the parties, the value of the property, and whether

the property is marital or separate. See section 452.330. After setting apart nonmarital

property, the court would then be required to divide the marital property and debts as it

 27
deems just, applying the statutory factors in section 452.330. In other words, after setting

aside the division of property, the court would simply divide whatever marital property the

parties possess at the time of readjudication.

 As it would if dividing the property for the first time, the circuit court could account

for dissipated or squandered assets that existed at the time of first trial but not the second

trial by holding the dissipating or squandering party liable for the value of the asset through

the nature of its division of property. Kester v. Kester, 108 S.W.3d 213, 222 (Mo. App.

2003). Courts can order reimbursement or use a pre-dissipation valuation and award that

asset to the wrongdoer, thereby reducing that party’s award of other marital assets. See,

e.g. Martin v. Martin, 504 S.W.3d 130, 136 (Mo. App. 2016); Marriage of Thomas v.

Thomas, 21 S.W.3d 168, 173 (Mo. App. 2000). Further, if it is impossible to divide

property in kind, the court may order a monetary award to justly divide marital property.

Chambers v. Chambers, 910 S.W.2d 780, 785 (Mo. App. 1995); see also Dickerson v.

Dickerson, 580 S.W.3d 98, 107 (Mo. App. 2019) (recognizing a monetary award is

appropriate where necessary to affect a fair and equitable distribution).

 Likewise, the passage of time and change in the value of marital property since the

date of the dissolution does not preclude relief. In general, the appropriate date for valuing

marital property in a dissolution proceeding is the date of trial, Taylor v. Taylor, 736

S.W.2d 388, 391 (Mo. banc 1987), but “where the division of property is not reasonably

proximate to the time of trial, the valuation date should be the date of the division of

property.” Wright v. Wright, 1 S.W.3d 52, 57 (Mo. App. 1999). In such cases, “the court

should hold another hearing to determine the value of the marital property at the time of its

 28
division.” Id. at 58. On remand in this case, the circuit court will need to consider the

current value of marital property. See Morgan v. Ackerman, 964 S.W.2d 865, 869 (Mo.

App. 1998) (directing the circuit court to receive evidence of value of property on remand

in view of the likelihood that 30-month-old valuation was stale); Marriage of Rickard v.

Rickard, 818 S.W.2d 711, 715 (Mo. App. 1991) (holding the proper date for valuation of

marital property was date of retrial after remand, rather than date of dissolution).

 Because the circuit court is not precluded from granting relief due to Husband’s

death or OMERS/DIT’s payment for the marital Epiq shares and Husband’s golden-

parachute benefits, outstanding stock options, and restricted stock awards, the cause is not

moot. If Wife establishes Husband procured the division of marital property through fraud,

the circuit court has authority to vacate its division of marital property in the dissolution

judgment and readjudicate the division of the marital estate. In readjudicating the division

of property pursuant to section 452.330, the court must divide the marital estate as it exists

at the time of readjudication, which would include proceeds from the sale of Epiq shares

and funds Husband received as benefits. 10

10
 Judge Fischer’s dissenting opinion disparages Wife for making “speculative” allegations
of fraud that she has yet to prove. While Wife’s allegations in her Rule 74.06(b) motion
are unproven, the circuit court’s erroneous judgment on the pleadings has denied her the
opportunity to present evidence of Husband’s fraud. Judge Fischer’s dissenting opinion
further suggests Wife is litigious despite the fact the only litigation Wife initiated after the
dissolution of marriage proceeding is the underlying Rule 74.06(b) proceeding. This
criticism of Wife by Judge Fischer’s dissenting opinion is unwarranted and puzzling.

 29
 Conclusion

 Because the cause is neither moot nor abated, the circuit court erred in sustaining

the personal representative’s motion for judgment on the pleadings and dismissing Wife’s

Rule 74.06(b) motion. The circuit court’s judgment is vacated, and the cause is remanded.

 ___________________________________
 PATRICIA BRECKENRIDGE, JUDGE

Russell and Draper, JJ., and
Dowd, Sr.J., concur; Powell, J.,
dissents in separate opinion filed;
Fischer, J., dissents in separate opinion
filed; Wilson, C.J., concurs in opinion
of Fischer, J. Ransom, J., not participating.

 30
 SUPREME COURT OF MISSOURI
 en banc
JEANNE H. OLOFSON, )
 )
 Appellant, )
 )
v. ) No. SC98043
 )
SCOTT W. OLOFSON, in his Capacity )
as Personal Representative of the )
Estate of TOM W. OLOFSON, )
 )
 Respondent. )

 DISSENTING OPINION

 I write separately because I disagree with the principal opinion's conclusion that the

doctrine of abatement does not apply to Wife's Rule 74.06(b) motion. Because the circuit

court rendered a final judgment dividing the property and that judgment is not subject to

appeal or a motion for new trial, any action attempting to modify the judgment has abated

due to Husband's death. Even if Wife's motion did not abate, the plain language of Rule

74.06(b) does not contemplate relief from a portion or portions of a final judgment or order,

only relief from that final judgment or order as a whole. Therefore, even if Wife could

eventually prove her speculative allegations, the circuit court could not merely provide

relief from the property division; Rule 74.06(b) requires it to vacate the entire original

dissolution decree. For these reasons, I respectfully dissent.
 I.

 Husband's Death Caused Wife's Motion to Abate

 The principal opinion holds, "[b]ecause the proceedings on Wife's Rule 74.06(b)

motion alleging Husband's fraud did not involve issues personal to the parties, the circuit

court erred in holding the proceedings abated upon husband's death." Slip op. at 16. In

reaching this conclusion, the principal opinion believes the relevant abatement test is

whether or not the issue is "personal" to the parties—this is not so. 1 Instead, as

demonstrated by other court of appeals cases, the test is whether the circuit court entered a

final property division order before one of the parties died. In any event, Wife's motion

abates because the property division portion of the dissolution decree is indivisible from

the dissolution decree itself; therefore, it is subject to the same abatement principles as a

dissolution action.

 In Clark v. Clevenger, the circuit court dissolved Husband and Wife's marriage,

awarded them joint physical custody of their children, and ordered Husband to pay Wife

weekly child support. 978 S.W.2d 511, 512 (Mo. App. 1998). Five years later, Wife filed

a motion to modify the dissolution decree, seeking an increase in child support and attorney

fees. Id. Before the circuit court ruled on the motion, Husband died. Id. Nevertheless,

the circuit court modified the dissolution decree and awarded Wife increased child support

and attorney fees. Id. Husband's personal representative appealed. Id.

1
 In reaching its untenable conclusion, the principal opinion relies heavily on tort principles
involving the "personal" nature of the action. Slip op. at 11-12. Of course, this case is not a tort
action, it involves a Rule 74.06(b) motion to set aside a dissolution decree.
 2
 On appeal, Wife argued the modification action did not abate on Husband's death.

Id. at 513-14. Specifically, Wife argued—much like the principal opinion holds now—

that any action involving property rights does not abate on the death of a party. Id. at 514.

The court of appeals rejected this very argument, holding:

 We are not willing to interpret the language in Carter to mean that a
 modification action involving property rights never abates. Instead, we
 believe that a modification action involving the distribution of property
 abates upon the death of a party, except where no final order dividing the
 property is in effect. In the present case, a final order addressing [Husband]'s
 obligation to pay child support was entered prior to [Husband]'s death on
 March 8, 1991, thus, the current modification action abated regardless of
 whether the action involved property rights.

Id. (emphasis added).

 In Winters v. Cooper, 827 S.W.2d 233 (Mo. App. 1991), the court of appeals held

similarly. In that case an Arizona court dissolved the parties' marriage and awarded them

joint custody of their three children. Id. at 234. The parties relocated to Missouri and

Husband remarried. Id. Subsequently, Husband filed a motion to modify the divorce

decree, requesting he be awarded primary custody of the children. Id. The circuit court

heard evidence on the motion but Husband died before the circuit court entered its

judgment, which granted full custody to Husband. 2 Id. Wife appealed, arguing the motion

to modify abated on Husband's death. Id.

 The court of appeals agreed and determined the circuit court lacked jurisdiction to

modify the dissolution decree. Id. In so holding, that court recognized:

 Once the court entered a valid dissolution decree, the court retained limited
 jurisdiction to make subsequent modifications and alterations of the

2
 The circuit court awarded custody to Husband's new wife after his death. Winters, 827 S.W.2d
at 234.
 3
 provisions of the decree relating to child custody, child support and spousal
 maintenance.[3] If a motion to modify was brought, death of either party,
 again, operated to abate any further action of the court and the court lost
 jurisdiction.

Id. (emphasis added) (internal citations omitted).

 Taken together, Clark and Winters demonstrate the relevant inquiry in an abatement

analysis is whether the circuit court has entered a final judgment of dissolution declaring

the property rights of the parties. 4 Put another way, in this circumstance, the law cares that

the property rights of Husband and Wife were finally decided, not necessarily how they

were decided. Here, neither Wife nor the principal opinion quarrel with the fact the circuit

court entered a final judgment that included a property division. Neither party appealed

that judgment and it is not subject to a motion for new trial. It is also undisputed Wife filed

a motion to set aside the dissolution decree, or in the alternative, just the property division,

and Husband died before the circuit court ruled on that motion. These facts put this case

squarely within Clark and Winters' purview; therefore, Wife's action to set aside the

property division portion of the dissolution decree abated upon Husband's death.

 Nevertheless, the principal opinion argues "Clark and Winters are not authority for

the proposition that a motion to vacate the property division portion of a dissolution

3
 Notably, the Winters court did not mention property division in this passage, presumably because
such a decree is statutorily nonmodifiable. § 452.330.5, RSMo 2016.
4
 In Cregan v. Clark, 658 S.W.2d 924, 926 (Mo. App. 1983), Husband and Wife appealed from an
order decreeing legal separation of the parties, dividing property, and providing for maintenance
and child support. During the pendency of appeal, Husband died. Id. Wife argued Husband's
death abated the cause of action. Id. The court of appeals rejected this argument, noting that the
dissolution decree (including the property division) were not "final" because "the court has not
spoken the last word on the dispute and the rights of the parties are not conclusively settled." Id.
at 927. Clearly, the same concerns present in Cregan are not present here. The circuit court
conclusively divided the property between Husband and Wife and that judgment is not subject to
appeal or new trial; only a collateral attack on the dissolution judgment as a whole.
 4
judgment pursuant to Rule 74.06(b) categorically abates upon the death of a party if the

underlying dissolution judgment is final and not subject to appeal or a motion for new

trial." Slip op. at 16. This statement highlights the principal opinion's misunderstanding

of the nature of Wife's motion to set aside the property division portion of the dissolution

decree.

 A property division is wholly dependent upon the resolution of marital status

between the parties. See § 452.330.1, RSMo 2016 (stating a property division can only

take place in the context of a "proceeding for dissolution of the marriage or legal

separation"); see also Cregan, 658 S.W.2d at 927. Said a different way, property division

may not take place in a vacuum; it must take place during the determination of marital

status. It follows that the setting aside of the property division portion of a dissolution

decree is a modification of the dissolution decree itself. 5 Courts have recognized a motion

to modify the dissolution decree abates upon a party's death just like a dissolution

proceeding abates upon a party's death. See Smithart v. Sportsman, 614 S.W.2d 320, 322

(Mo. App. 1981) ("[Motions to modify the dissolution decree] are in a sense a continuation

of the original action for dissolution, and are ancillary thereto. As an action based on an

action which does not survive, they abate along with the original action for dissolution[.]")

(internal citations omitted); see also Leventhal v. Leventhal, 629 S.W.2d 505, 507 (Mo.

App. 1981).

5
 As previously mentioned, property divisions, unlike other portions of the dissolution decree, are
statutorily nonmodifiable. § 452.330.5, RSMo 2016; Ochoa v. Ochoa, 71 S.W.3d 593, 595 (Mo.
banc 2002). Without a statutory avenue to modify a portion of the dissolution decree, the property
division portion is inseparable from the overall dissolution decree.
 5
 Here, Wife filed a motion to set aside judgment of dissolution of marriage, or,

alternatively, the property division portion of the judgment. I do not quarrel with the fact

that the entire dissolution decree (which, is composed of many different portions, property

division included) may be set aside if Wife's speculative allegations of fraud are eventually

proven. 6 However, if Wife is successful and the entire dissolution decree is set aside, she

could not institute a second dissolution proceeding because Husband's death will have

abated any such action. Linzenni v. Hoffman, 937 S.W.2d 723, 726 (Mo. banc 1997).

 Cognizant of the result if Wife succeeds on her primary argument, the principal

opinion focuses on Wife's alternative argument of setting aside only the property division

portion of the judgment. 7 Tellingly, the principal opinion cites no cases from this Court

and no persuasive cases from the court of appeals where a husband or wife was able to set

aside only the property division portion of a dissolution decree for fraud. Instead of citing

cases on point, the principal opinion attempts to rely on Anderson v. Dyer, 456 S.W.2d 808

(Mo. App. 1970), Hemphill v. Quigg, 355 S.W.2d 57 (Mo. 1962), and Richmond v.

Richmond, 225 S.W.126 (Mo. App. 1920), which merely stand for the unremarkable

proposition that a court may vacate an entire dissolution decree for fraud. The fact that the

principal opinion can cite no cases supporting its conclusion demonstrates two things:

(1) the only method to attack a property division portion of a dissolution decree is to attack

6
 The principal opinion notes, "[a]ssuming the truth of Wife's well-pleaded allegations. . .
Husband's statements were false." Slip op. at 4. This is a correct statement of the law at this stage
in the proceedings because Wife's allegations have not been proven. It is not for this Court to
determine facts in the first instance and the burden remains on Wife to prove her allegations on
remand.
7
 Of course, this assumes Rule 74.06(b) allows for relief from portions of judgments, and it does
not. See infra Section II.
 6
the dissolution decree as a whole; and (2) the decision reached today is wholly

unprecedented.

 II.

 Rule 74.06(b) Allows for Relief Only from Final Judgments
 or Orders in Their Entirety

 Assuming arguendo Wife's motion was not abated by Husband's death, Rule

74.06(b) may not be used to modify or set aside portions of a final judgment. "The

principles used to interpret Missouri rules are the same as those used to interpret statutes."

State ex rel. Universal Credit Acceptance, Inc. v. Reno, 601 S.W.3d 546, 548 (Mo. banc

2020). "This Court's primary rule of interpretation is to apply the plain language of the

rule at issue." In re Hess, 406 S.W.3d 37, 43 (Mo. banc 2013). Rule 74.06(b) provides:

 On motion and upon such terms as are just, the court may relieve a party or
 his legal representative from a final judgment or order for the following
 reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud
 (whether heretofore denominated intrinsic or extrinsic), misrepresentation,
 or other misconduct of an adverse party; (3) the judgment is irregular; (4) the
 judgment is void; or (5) the judgment has been satisfied, released, or
 discharged, or a prior judgment upon which it is based has been reversed or
 otherwise vacated, or it is no longer equitable that the judgment remain in
 force.

(Emphasis added).

 Simply put, the plain language of Rule 74.06(b) does not specify providing relief

from portions of judgments or orders, only "a final judgment or order." While guidance

from this Court on the meaning of Rule 74.06(b)'s language is scarce at best, numerous

court of appeals opinions have held Rule 74.06(b) does not allow relief from portions of

final judgments or orders; only final judgments or orders in their entirety. Spicuzza v.

Spicuzza, 886 S.W.2d 660, 661 (Mo. App. 1994) ("Rule 74.06 makes no provision for the
 7
amendment or modification of a judgment, or for relief from part of a judgment[.]"); Settles

v. Settles, 913 S.W.2d 101, 103 (Mo. App. 1995) (same); Young v. Young, 273 S.W.3d 86,

89 (Mo. App. 2008); In re Marriage of Rolfes, 187 S.W.3d 355, 358 (Mo. App. 2006). In

this same vein, the court of appeals has astutely held "[i]f [Rule 74.06(b)] applies, the

judgment is vacated." Lombardo v. Lombardo, 120 S.W.3d 232, 241 n.6 (Mo. App. 2003).

 Instead of following the plain language of Rule 74.06(b) and the court of appeals

decisions uniformly holding the Rule does not apply to provide relief from portions of

judgments, the principal opinion undertakes a strained interpretation of the Rule's plain

language to reach its desired conclusion. Additionally, the principal opinion dismisses

Spicuzza and its progeny as failing to follow this Court's "most recent controlling decision"

in Kibbons v. Union Electric Co., 823 S.W.2d 485 (Mo. banc 1992). Slip op. at 22.

However, a close review of Kibbons demonstrates that case is sufficiently distinguishable

from Spicuzza, its progeny, and this case so as not to be controlling. 8 Because the principal

8
 Kibbons did not involve relief sought from a dissolution decree. In that case, the decedent's
surviving spouse and children received a wrongful death judgment against a real estate developer
and an electric utility. 823 S.W.2d at 486-87. After the circuit court entered judgment, the
plaintiffs filed a Rule 74.06(b)(3) motion claiming the judgment was "irregular" because it did not
provide for joint and several liability. Id. at 487. The circuit court agreed and amended the
judgment to reflect joint and several liability. Id.
 On appeal, the electric utility conceded Rule 74.06(b)(3) allowed the circuit court to relieve
a party from an irregular judgment as a whole, but argued the Rule did not allow the circuit court
to modify the original judgment. Id. at 490. This Court disagreed and held Rule 74.06(b) permits
a circuit court to modify an irregular judgment. Id. at 491. In so holding, this Court reasoned:

 [A] motion to set aside a judgment for irregularity ... is available as a remedy only
 in those cases where there is some irregularity appearing in the judgment itself or
 on the face of the proceeding antecedent thereto. And, while this irregularity need
 not be one which would render the judgment absolutely void, and therefore subject
 to be defeated on collateral attack, it must be one which indicates at least that the
 judgment was given contrary, in some material respect, to the established form and
 mode of procedure for the orderly administration of justice. An irregularity in the
 8
opinion's interpretation of the Rule distorts its plain language and would overrule a number

of correctly decided court of appeals cases with no compelling justification, I do not concur

with it.

 sense of the law may be said to be a want of adherence to some prescribed rule or
 mode of procedure, consisting either in omitting to do something that is necessary
 for the due and orderly conduct of the suit, or in doing it at an unseasonable time
 or in an improper manner.

Id. at 490 (alterations in original) (quoting Cross v. Gould, 110 S.W. 672, 676 (Mo. App. 1908)).
 After considering this description, this Court determined the circuit court's original
judgment contained "patent and procedural" error because the circuit court's judgment was
contrary to an established mode of procedure, i.e. the circuit court was not allowed as a matter of
law to enter separate judgments against each defendant. Id. Additionally, this Court, relying on
Audsley v. Allen, 774 S.W.2d 142, 146 n.5 (Mo. banc 1989), held that the Rule's use of the word
"relief" allows a circuit court to modify a judgment as well as to set aside the judgment in its
entirety. Id. at 491.
 Kibbons is certainly different than the case at hand. First, Kibbons did not involve a
dissolution case. This distinction makes a difference, as the property division portion of the
dissolution decree in this case, unlike the judgment in Kibbons, is statutorily nonmodifiable. See
supra n.5. Second, in this case, Wife does not allege any portion of circuit court's judgment is
"irregular." Said another way, Wife does not point to a prescribed rule or mode of procedure the
circuit court failed to follow. Instead, she argues the dissolution decree was completely tainted by
fraud.
 Finally, Kibbons extended the Audsley footnote past its stated boundaries when it held
Audsley "recognizes that Rule 74.06(b) permits a trial court to modify a judgment." 823 S.W.2d
at 491. In Audsley, the circuit court modified its original judgment. 774 S.W.2d at 144. On appeal,
this Court noted the language included in the modified judgment was contradictory and stated,
pursuant to Rule 84.14, it would amend the judgment to reflect the order the circuit court should
have entered. Id. at 146. In a corresponding footnote, this Court stated, "Inasmuch as the
judgment, as modified by the trial court, is internally inconsistent, it is very probably 'irregular'
and subject to modification under Rule 74.06(b). We see no need for protracted litigation over a
matter that we can easily correct." Id. at 146 n.5. Clearly, the Audsley footnote cannot be so
broadly read as to allow a circuit court to modify final judgments for any reason stated in Rule
74.06(b), only irregular judgments, which, as this Court has hinted at, are issues with the procedure
of the circuit court's judgment. Wife's claim of fraud certainly extends to the merits of the overall
dissolution action and does not actually attack the method or procedure of the circuit court's
judgment.
 Rule 74.06(b) seems to permit a circuit court to grant relief for any of the reasons
enumerated in the Rule. However, caselaw makes it clear that irregular judgements are sui generis
and are treated differently than other grounds for relief set out in this Rule. Because Kibbons
involves irregular judgments, is distinguishable from dissolution cases, and relies on an
impermissible expansion of Audsley, the court of appeals in Spicuzza and its progeny were correct
in not following Kibbons as binding precedent.
 9
 III.

 Property Division Decree Is Not a Separate "Final Judgment or Order"

 What is more, the property division itself cannot be characterized as an independent

"final judgment or order" from which a party may seek relief under Rule 74.06(b). In a

dissolution action, the "final judgment or order" is the dissolution decree, Carr v. Carr,

253 S.W.2d 191, 194 (Mo. 1952), which "completely and finally dissolves the marital

relationship between a husband and wife on the date of its entry, insofar as the

responsibilities and duties incident to their marriage relationship are concerned, and

restores the parties to the status of single persons, and permits each to marry again."

24 Am. Jur. 2d Divorce and Separation § 391 (2021). While the divorce decree is

undoubtedly composed of several different portions—child custody, child support,

property division, and maintenance—all of these portions are incidental to the overall

objective of a dissolution proceeding—resolution of marital status between spouses.

Carr, 253 S.W.2d at 194; Cregan, 658 S.W.2d at 927. ("[T]he power to distribute the

marital and non-marital property of the parties, the power to grant permanent maintenance

and the like are all predicated upon the decree of legal separation."). 9

 In my view, Rule 74.06(b) does not provide relief from a portion of a final judgment

of dissolution of marriage. The property division portion of the dissolution decree is not a

separate or independent final judgment. Therefore, if Wife is able to prove fraud, her only

9
 This State's statutes also support this proposition. See § 452.305.1(3), RSMo 2016 ("The court
shall enter a judgment of dissolution of marriage if . . . [t]o the extent it has jurisdiction, the court
has considered and made provision for child custody, the support of each child, the maintenance
of either spouse and the disposition of property.").
 10
recourse is to have the entire dissolution decree set aside, which, of course, would cause

the entire dissolution action to abate due to Husband's death. See Linzenni, 937 S.W.2d at

726. With this possible result in mind, Wife should proceed with caution in the underlying

action. 10

 __________________________
 Zel M. Fischer, Judge

10
 Although the procedural history of this case does not yet rival that of Jarndyce v. Jarndyce, this
protracted litigation—which, at this point, has yet to prove any allegations of fraud to set aside the
dissolution decree—over the previously-decided property division, may someday make Olofson v.
Olofson the non-fictional Jarndyce. CHARLES DICKENS, BLEAK HOUSE (Norman Page ed.,
Penguin Books 1971) (1853).
 11
 SUPREME COURT OF MISSOURI
 en banc
JEANNE H. OLOFSON, )
 )
 Appellant, )
 )
v. ) No. SC98043
 )
SCOTT W. OLOFSON, in his Capacity )
as Personal Representative of the Estate of )
TOM W. OLOFSON, )
 )
 Respondent. )

 DISSENTING OPINION

 I concur with Judge Fischer’s ultimate conclusion in Section I of his separate

opinion that Jeanne Olofson’s action abated upon the death of her husband, Tom Olofson.

Because the circuit court rendered a final judgment dividing and disposing the marital

property and that judgment is not subject to appeal or motion for new trial, any further

action seeking to set aside this judgment and distribute the marital assets and debts pursuant

to section 452.330, RSMo 2016, abated upon Tom Olofson’s death. For this reason, I

dissent and would affirm the circuit court’s judgment.

 ___________________
 W. Brent Powell, Judge